No. 12-14-00344-CV

FILED

5/14/2015

Twelfth Court of Appeals
Cathy Lusk
Clerk

In the Court of Appeals
Twelfth District of Texas
at Tyler

_____

Victor Lissiak, Jr.

Appellant

V.

SW Loan OO, L.P.

Appellee

_____

On Appeal from the 7th Judicial District Court
of Smith County, Texas

_____

**Appellee's Brief and Appendix**

_____

Stephen Sakonchick, II
State Bar No. 17525500
Stephen Sakonchick II, P.C.
6502 Canon Wren Drive
Austin, Texas  78746
(512) 329-0375
(512) 697-2859 (fax)

Attorney for Appellee
SW Loan OO, L.P.

## Table of Contents

Index of Authorities ........................................ v

Statement of the Case ....................................... x

Statement Regarding Oral Argument ......................... xi

Issues Presented .......................................... xi

Standard of Review ........................................ xii

Statement of Facts ......................................... 1

Summary of the Argument .................................... 3

Argument ................................................... 7

The Trial Court Impliedly Overruled Lissiak's Objections
To Sw's Summary Judgment Evidence and Sustained Sw's
Objections to Lissiak's Summary Judgment Evidence ....... 8

Alternative, Objection to Defects in Lissiak's Summary
Judgment Evidence- Brought Forward as Cross-Points ...... 10

    Defects in Lissiak's Affidavit ...................... 10

    Defects in Don's Affidavit .......................... 11

    Defects in the Holmes Declaration ................... 12

Elements for a Suit on a Note ........................... 13

Summary Judgment Evidence to Prove Up a Note ............ 13

SW's Summary Judgment Evidence and Prima Facie Case on
the Note ................................................ 16

Restated Issue No. 1- The trial court dd not err in
granting SW summary judgment since there were no genuine
issue of material fact .................................. 17

    Issue 1a-Holder Status .............................. 18

    Issue 1b-Lissiak's Signature on the $2.5 Million
    Note ................................................ 18

    Issue 1c-Consideration .............................. 21

    Issue 1d-Cancellation of Note ....................... 23

    Issue 1e-Estoppel ...................................... 25

Restated Issue No. 2- The trial court did not err in granting SW summary judgment since there was no genuine issue of material fact on the elements of SW's claims ... 26

    Issue 2a-SW is a Holder .............................. 26

    Issue 2b-Lissiak's Signature on the $2.5 Million Note ................................................... 26

    Issue 2c-Consideration .............................. 27

Restated Issue No. 3- The trial court dd not err in granting SW summary judgment since there was no competent summary judgment proof submitted by Lissiak to create a genuine issue of material fact on the elements of Lissik's affirmative defenses ........................... 28

    Issue 3a-SW is a Holder .............................. 29

    Issue 3b-Lissiak's Signature on the $2.5 Million Note ................................................... 29

    Issue 3c-Consideration .............................. 30

    Issue 3d-The Debt was Not Cancelled by the Renewal Notes ................................................... 30

    Issue 3e-Promissory Estoppel ........................ 32

    Restated Issue 3f-There was No Material Alteration or Cancellation by Payment Extension ................. 34

    Restated Issue 3g-Section 3.605, Texas Business and Commerce Code, There is no Discharge of Liability .... 35

Restated Issue No. 4- The trial court dd not err in granting SW summary judgment since SW presented competent summary judgment evidence on all of the elements of its claims ................................................ 38

    Objection to the Bates Affidavit .................... 39

    Objections to the Mortimer Affidavit ................ 40

    Objections to the Lang Affidavit .................... 42

Restated Issue No. 5-The trial court dd not abuse its discretion in granting SW summary judgment ............. 43

Restated Issue 5a-the trial court impliedly overruled Lissiak's objections to the Bates, Mortimer and Lang affidavits and Lissiak has appealed that ruling .................................. 45

Restated Issue 5b-SW met its burden of proof on summary judgment and the court did not abuse its discretion in granting the motion for summary judgment .......................................... 46

Restated Issue 5c-SW meet its burden of proof and was entitled to summary judgment .................... 46

Relief In Lissiak's Conclusion and Prayer .............. 46

Conclusion and Prayer ................................... 47

Certificate of Compliance ............................... 47

Certificate of Service .................................. 47

Appendix

Confidentiality Agreement (CR, v. 3 at 619).......... A-1

Relevant Statutes and Rules ......................... A-2

# INDEX OF AUTHORITIES

**Cases**

*Alejandro v. Bell*, 84 S.W.3d 383, 387-88 (Tex. App.-Corpus Christi 2002 no pet) citing to *Columbia Rio Grande Reg'l Hosp. v. Stover,* 17 S.W.3d 387, 395 (Tex.App.-Corpus Christi 2000, no pet.) .................. 45

*Atchley v. NCNB Texas National Bank*, 795 S.W.2d 336, 337 (Tex. App. - Beaumont 1990, writ denied) ............. 14,17 42,43

*Bank of Austin v. Barnett*, 549 S.W.2d 428 (Tex. Civ. App.-Austin 1977, no writ) ................................ 20,36

*Barnam v. Sugar Creek National Bank,* 612 S.W.2d 78, 80, (Tex. App.-Houston [14th Dist] 1981, no writ) ........ 15,16, 39,40, 42,43

*Bean v. Bluebonnet Sav. Bank FSB,* 884 S.W.2d 520, 522 (Tex. App.-Dallas 1994, no writ) ........................ 13

*Blum v. Julian,* 977 S.W.2d 819, 823 (Tex. App.-Fort Worth 1998, no pet.) ............................... 9

*Boyd v. Diversified Fin. Sys.*, 1 S.W. 3d 888, 891 (Tex. App-Dallas 1999, no pet) ................................ 14,16,

*Brown v. Brown*, 145 S.W.3d 745, 751 (Tex. App.-Dallas 2004, pet denied) ............................... 10

*Brownlee v. Brownlee*, 665 S.W.2d 111, 112 (Tex. 1984) .... 11,12, 29,32, *37,39*

*C&G Coin Meter Supply Corp. v. First National Bank*, 413 S.W.2d 151, 154 (Tex. Civ. App.-Eastland 1967, writ ref'd n.r.e.) ....................................... 24,34

*Christian v. University Federal Savings,* 792 S.W.2d 533, 534 (Tex. App.--Houston [1st Dist.] 1990, no writ) ....... 13,16

*City of Houston v. Lyons Realty Ltd*, 710 S.W.2d 625, 629 (Tex. App.-Houston, 1986, no writ) .................. 22

*Clark v. Dedina,* 658 S.W.2d 293, 295 (Tex. App.-Houston [1st Dist.] 1983, writ dism'd) .................. 13

*Conte v. Greater Houston Bank*, 641 S.W.2d 411, 414 (Tex. App.-Houston [14th Dist] 1982, writ ref'd n.r.e.) ........ 11,12, 32,37

*Dolcefino v. Randolph*, 19 S.W.3d 906, 926 (Tex. App.— Houston [14th Dist.] 2000, pet. denied) .................. 9

*Eli Lilly & Co. v. Marshall*, 829 S.W.2d 157, 158 (Tex. 1992) ......................................... 44

*Fair Woman, Inc. v. Transland Management Corp.*, 766 S.W.2d 323 (Tex. App. - Dallas 1989, no writ) ........... 11,12

*First Galesburg Nat. Bank, Etc. v. Martin*, 58 Ill. App. 3d 113, 15 Ill. Dec. 603, 373 N.E.2d 1075 (1978)..... 36

*First Gibraltar Bank, FSB v. Farley,* 895 S.W.2d 425, 428 (Tex. App.--San Antonio 1995, writ denied) .......... 13,14, 16,41, 42

*First State Bank v. Kellman*, 851 S.W.2d 914, 920 (Tex. App.-Austin 1993, writ denied) .................... 24

*Frazier v. Yu,* 987 S.W.2d 607, 610 (Tex. App.- Fort Worth 1999, pet. denied) .......................... 9

Fulenweider v. City of Teague, 680 S.W.2d 582, 585 (Tex. App.-Waco 1984, no writ) ......................... 11,12, 13,32, 37

*Gaylord Container Division of Crown Zellerbach Corporation v. H. Rouw Company*, 392 S.W.2d 118, 120 (Tex. 1965) ...................................... 22,28, 33

*Gibralter Savings Association v. Watson*, 624 S.W.2d 650 (Tex. App.-Houston [14th Dist.] 1981 no writ) ......... 36

*Goode v. Shoukfeh*, 943 S.W.2d 441, 446 (Tex. 1997) ....... 43,46

*Harley-Davidson Motor Co. v Young*, 720 S.W.2d 211, 213 (Tex. App.-Houston [14th Dist.] 1986, no writ) ........ 10,11 13,32, 37

*Holland v. First Nat. Bank in Dallas*, 597 S.W.2d. 408, 411 (Tex. Civ. App.-Dallas 1980, writ dism'd) ............ 14,16, 39,41, 42

*Hou-Tex, Inc. v. Landmark Graphics*, 26 S.W.3d 103, 112 (Tex. App.-Houston [14th Dist.] 1986, no writ) ........ 10

*Hunter v. Lanius,* 82 Tex. 677, 18 S.W. 201 (1892) ........ 22

*In re Kleven*, 100 S.W.3d 643, 644 (Tex. App-Texarkana 2003 orig. proceeding) .................................. 44

*In re Shredder Co.*, 225 S.W.3d 676, 679 (Tex. App-El Paso 2006 orig., proceeding) .......................... 44

Johnson & Higgins, Inc. v. Kenneco Energy, 962 S.W.2d 507, 515-16 (Tex. 1998) .................................. 26,33

*Landers v. Texas American Bank*, 788 S.W.2d 162, 165 (Tex. App. - Ft. Worth 1990, no writ) ................... 15,16, 39,40, 42,43

*Mid-Eastern Electronics, Inc. v. First National Bank of Southern Maryland*, 7 U.C.C. 1089 (4th Cir. 1970) ........ 36

*Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548-49 (Tex.1985) ......................................... xii

*Odom v. Insurance Company of the State of Penn.*, 455 S.W.2d 195, 198 (Tex. 1970) ............................... *xii*

*Provident Life & Accident Ins. Co. v. Knott,* 128 S.W. 3d 211,215 (Tex. 2003) .......................... xii

*People's Bank of South Carolina, Inc. v. Robinson*, 272 S.C. 155, 249 S.E. 2d 784 (1978) .................... 36

*Priest v. First Mortgage Company of Texas, Inc.*, 659 S.W.2d 869, 871 (Tex. Civ. App.-San Antonio 1983, writ ref'd n.r.e.) ................................... 23

*Schwab v. Schlumberger Well Surveying Corp.*, 198 S.W.2d 79 (Tex. 1946) ............................... 20,23, 27,34

*Slaughter v. Philadelphia National Bank,* 290 F.Supp. 234 (E.D.Pa.1968) .................................... 36

*Smith v. First Pasadena State Bank,* 401 S.W.2d 123, 127 (Tex.App.--Houston [1st Dist.] 1966, no writ) ........ 23,27, 31

*SMS Fin., LLC v. ABCO Homes, Inc.,* 167 F.3d 235, 238 (5th Cir. 1999) ......................................... 13

*State Bank of Grove v. North*, 418 P.2d 928 (Okla. 1966) .. 19

*Thompson v. Chrysler First Bus. Credit*, 840 S.W.2d 25, 28 (Tex. App. - Dallas 1992, no writ history) ....... 14,16, 41,42, 43

*Trans-Continental Finance v. Summit National Bank*, 761 S.W.2d 575, 577 (Tex. App. - Ft. Worth 1988, no writ history) ......................................... 14,16, 42,43

*Trusty v. Strayhorn*, 87 S.W.3d 756, 762-63 (Tex. App-Texarkana 2002, no pet ................................... 10

*Villareal v. Laredo Nat'l Bank,* 677 S.W.2d 600, 607 (Tex.App.--San Antonio 1984, writ ref'd n.r.e.) .......... 23,27, 30

*Waite v. Banc Texas - Houston, N.A.*, 792 S.W.2d 538, 540 (Tex. App. - Houston [1st Dist.] 1990, no writ) ...... 15,17 39,40, 42,43

*Well Solutions, Inc. v. Stafford*, 32 S.W.3d 313, 317 (Tex. App.—San Antonio 2000, no pet.) ................ 9

*Zarges v. Bevan,* 652 S.W.2d 368, 369 (Tex. 1983) ......... 14,41, 42

**Statutes**

Tex. Bus & Comm Code Section 1.201(b)(39) ................ 36

Tex. Bus & Comm Code Section 3.308 ...................... 14,16, 39,41, 42

Tex. Bus & Comm Code Section 3.401 ...................... 3,5, 23

Tex. Bus & Comm Code Section 3.605 ........................ 35

Tex. Bus & Comm Code Section 9.102(a)(72) ................ 36

**Rules**

Tex. R. Civ. P. 93(7) .................................... 14,16,
18,29,
39,41,
42

Tex. R. Civ. P. 166a(c) .................................. 15,40,
42

Tex. R. Civ P. 166a(f) ................................... 10

Tex. R. Civ. Evid. 902(10) ............................... 40,41
42

Tex. R. App. P. 33.1(a)(2)(A) ............................ 21

**STATEMENT OF THE CASE**

This case is about liability on a debt, evidenced by a series of notes, the most recent of which was signed effective September 30, 2008 in the original principal amount of $2.5 million ("$2.5 Million Note"). CR, v. 1 at 221-223 and Suppl. CR, v. 1 at 34-36, 38-40, 42-44. The initial suit was filed by a limited partnership, as the borrower on construction debt for a high rise condominium project in Tyler, Texas and a guarantor of that debt, against the bank as the lender on the project, appellee as the assignee of parts of that debt and appellant. CR, v. 1 at 1-49 and 54-102. Appellee filed a counter-claim against the plaintiffs in the suit on debt and guaranties, and a cross-claim against appellant on the $2.5 Million Note. CR, v. 1 at 103-149.

As a result of a series of agreements, all of the parties were nonsuited or dismissed except for the cross-claim of appellee against appellant. CR, v. 1 at 156, 163, 164, 174, 175 and 183-84. Appellee filed a motion for summary judgment on its cross-claim. CR, v. 1 at 198-225. The appellant, having not previously answered the cross-claim, answered asserting 14 affirmative defenses, filed a response to the summary judgment and objections to appellee's summary judgment evidence. CR, v. 1 at 226-232, 237-244 and Suppl. CR, v. 1 at 2-23.

Appellee filed responses to the objections to its summary judgment evidence, filed its own objections to appellants summary judgment evidence, and a comprehensive reply. CR, v. 3 at 602-610,

611-619 and 620-633. The trial court granted appellee's motion for summary judgment and signed a judgment in the case in favor of appellee dated February 21, 2014. CR., v. 3 at 634-635.

Appellee filed a motion for new trial and an amended motion for new trial. CR, v. 3 at 639-649 and 665-679. However, before the court ruled on these motions or they were overruled as a matter of law, appellant filed for bankruptcy protection which stayed the proceedings. CR, v. 3 at 699-703. After the bankruptcy stay was lifted for the case to proceed, the trial court reinstated the case and the appellant filed the instant appeal. CR, v. 3 at 712 and 713-14.

## STATEMENT REGARDING ORAL ARGUMENT

This case can be decided on the record and the briefs and oral argument is not necessary.

## ISSUES PRESENTED-RESTATED

Restated Issue No. 1- The trial court dd not err in granting SW summary judgment since there were no genuine issues of material fact.

Restated Issue No. 2- The trial court did not err in granting SW summary judgment since there was no genuine issues of material fact on the elements of SW's claims.

Restated Issue No. 3- The trial court dd not err in granting SW summary judgment since there was no competent summary judgment proof submitted by Lisiak to create a material issue of fact on the elements of Lissiak's affirmative defenses.

Restated Issue No. 4- The trial court did not err in granting SW summary judgment since SW presented competent summary judgment evidence on the elements of its claims.

Restated Issue No. 5-The trial court dd not abuse its discretion in granting SW summary judgment.

**STANDARD OF REVIEW**

The standard for review on traditional motions for summary judgment is *de novo*. *Provident Life & Accident Ins. Co. v. Knott,* 128 S.W. 3d 211,215 (Tex. 2003). The standards for reviewing a summary judgment are well established: (1) the movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law; (2) in deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true; and (3) every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor. *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548-49 (Tex.1985).

In determining whether summary judgment should be granted, the question is not whether the summary judgment proof raises an issue of fact, but whether the movant's summary judgment proof establishes as a matter of law that no genuine issue of material fact exists as to one or more elements of the alleged causes of action. *Odom v. Insurance Company of the State of Penn.,* 455 S.W.2d 195, 198 (Tex. 1970).

## Statement of Facts

Appellee, SW Loan OO, L.P. ("SW") objects to Appellant's Statement of Facts in that it is not based on competent summary judgment evidence and is based on affidavits fraught with legal and factual conclusions not supported by evidence, violations of the parole evidence rule and subjective beliefs not supported by competent evidence. This is a suit on a debt evidenced by a series of notes the last of which was signed by Lissiak, and others, dated September 30, 2008 in the amount of $2.5 million ($2.5 Million Note"). CR, v. 1 at 221-223. The remainder of Lissiak's background in his statement of facts is irrelevant, the summary judgment evidence supporting it impliedly overruled, and should not be considered.

This case is a suit on a debt evidenced by a series of notes signed by appellant Victor Lissiak, Jr. ("Lissiak") and others, the most recent of which is the $2.5 Million Note. CR, v. 1 at 221-223, and Suppl. CR, v. 1 at 34-36, 38-40, 42-44. The $2.5 Million Note, by its terms, was to "consolidate, extend the maturity dates and otherwise amend and restate" a $1.2 million Note, a $500,000 Note and an $800,000 Note (collectively" Short Term Notes"). *Id.*

The $1.2 Million Note was originally dated February 20, 2008, renewed by a note of the same amount on June 19, 2008, and then renewed and consolidated  into the $2.5 Million Note.  Suppl. CR, v. 1 at 34-36 and 46, and CR, v. 1 at 221-223. The $500,000 Note was originally dated March 28, 2008,  renewed by a note of the same

1

amount on June 19, 2008, and then renewed and consolidated into the $2.5 Million Note. Suppl. CR, v. 1 at 38-40 and 46, and CR, v. 1 at 221-223. The $800,000 Note was originally dated July 7, 2008, and then renewed and consolidated into the $2.5 Million Note. Suppl. CR, v. 1 at 42-44, and CR, v. 1 at 221-223.

After the $2.5 Million Note matured, Lissiak refused to sign any further renewals of the debt evidenced by the note and it came due as to him. CR, v. 1 at 103-149 and 213-218. In addition to Lissiak, the joint signatories on all of the notes described above, were J. Randolph Light Jr. ("Light"), a plaintiff in the underlying litigation, and Lawrence C. Don ("Don") CR, v.1 at 221-223. Don had filed for bankruptcy and was not included in the litigation in the trial court.

Although subsequent renewals of the $2.5 Million Note were prepared for Lissiak, Light and Don, they were only signed by Light. Suppl. CR, v. 1 at 91-93, 142-144, 160-162 and 178-180. These renewal notes ("Renewal Notes") served to extend the maturity date without affecting Lissiak's liability on the debt evidenced by the $2.5 Million Note, since Lissiak was not released from that debt. *Id.*

SW settled its counterclaim against Light for his liability on the $2.5 Million Note. Mr. Holmes, Lissiak's attorney, was provided a copy of the settlement agreement under a confidentiality agreement, which he violated by attaching it attached to Holmes declaration submitted as part of Lissiak's summary judgment

2

evidence.  CR, v. 3 at 619 and Suppl. CR, v. 1 at 65-180.

SW's cross-claim against Lissiak, the sole remaining issue in the trial court, was dealt with by a summary judgment motion in the trial court that was granted, resulting in this appeal.  CR, v.1 at 103-149, 199-225, and CR, v. 3 at 620-633, 634-35 and 713-14.

## Summary of the Argument

SW was entitled to the summary judgment it was granted by the trial court.  In ruling on the SW's motion for summary judgment, the trial court found, by implication, SW's summary judgment evidence to be competent and Lissiak's not to be competent.  SW's summary judgment evidence was supported by fact and law.  Lissiak's summary judgment evidence, on the other hand, was rife with substantive errors since the statements are legal and factual conclusions without evidentiary support, subjective beliefs unsupported by evidence, violate the parole evidence rule and statements attributable to SNB do not refer to any specific individual making the statement or showing that individual had authority to make the statement.

While alleging 14 affirmative defenses in a scattershot approach in his live pleading, Lissiak does not bring them all into this appeal.  He limits his arguments to 7 of them, being  holder in due course, authenticity of his signature on the  $2.5 Million Note, failure of consideration, cancellation of the debt instrument (Section 3.401 of the Texas Business and Commerce Code), promissory estoppel, material alteration/cancellation by payment extension,

3

and discharge of liability (Section 3.605 of the Texas Business and Commerce Code).

The affirmative defense related to holder in due course is a red herring. SW never asserted it was a holder in due course. The $2.5 Million Note had already matured and was past due at the time it was negotiated to SW. SW is the current owner and holder of the debt evidenced by the $2.5 Million Note and the Short Term Notes.

The $2.5 Million Note was the renewal and consolidation of the Short Term Notes. As a result the doctrine of waiver as to renewal notes applies. This doctrine of waiver defeats most of LissiaK's affirmative defenses such as failure of consideration and promissory estoppel.

In addition, the $2.5 Million Note, as a renewal of the Short Term Notes, did not extinguish the debt evidenced by those notes, but rather was the same debt evidenced by a new promise. As a result any allegation as to the authenticity of Lissiak's signature on the $2.5 Million Note and the other defenses brought forward in this appeal fail as a matter of law.

The authenticity defense also fails because Lissiak never denied signing the $2.5 Million Note. He simply claims that he did not recall signing the $2.5 Million Note and disputed the validity of his signature on it. However, what Lissiak never says is "I did not sign the $2.5 Million Note, and that is not my signature on it.." That is what he needed to say to bring his execution of the $2.5 Million Note into issue. Tex. R. Civ. P. 93(7). That rule

4

provides that such an affirmative defense is for the denial of the execution by himself or by his authority any instrument in writing upon which the pleading is founded. Furthermore, Lissiak's own summary judgment affidavit admits that his signature appears on the $2.5 Million Note.

The Renewal Notes, although only signed by Light, did not alter the debt on Lissiak's liability on the debt evidenced by the $2.5 Million Note and, in turn, the Short Term Notes. More importantly, under the express provisions of the $2.5 Million Note and the Short Term Notes, Lissiak and all signatories consent to any extension of time, and any of the parties can be released without discharging Lissiak's liability under these notes.

All the Renewal Notes did was to extend the maturity date of the debt evidenced by the $2.5 Million Note. It in no way released Lissiak as to his liability on the $2.5 Million Note or the Short Term Notes. The cross-claim was also filed well within the limitations period of the $2.5 Million Note and Short Term Notes. Therefore, the defenses of cancellation of the debt instrument (Section 3.401 of the Texas Business and Commerce Code), material alteration/cancellation by payment extension, and discharge of liability (Section 3.605 of the Texas Business and Commerce Code), are simply not proven and without merit, do not create a genuine issue of material fact, and fail as a matter of law.

Therefore, SW met his burden of proof and established a prima facia case as to Lissiak's liability on the debt evidenced by the

5

$2.5 Million Note and Short Term Notes, and the amount of that liability since:

SW supported its motion for summary judgment with competent summary judgment evidence,

Lissiak failed to raise any genuine issue of material fact on the elements of SW's claims for relief,

Lissiak had the burden to and failed to establish all of the elements on any of his affirmative defenses with competent summary judgment evidence,

Lissiak failed to meet make a *prima facie* case on all of the elements on any of his affirmative defenses, and

The trial court did not abuse its discretion in granting SW summary judgment since SW met its burden of proof, the trial court ruled on Lissiak's objections to SW's summary judgment evidence and SW's objection to Lissiak's summary judgment evidence by implication.

## Argument

This case is simple at its essence. It is simply about Lissiak's liability on a debt evidenced by promissory notes. The note being sued on is the $2.5 Million Note, which extends and consolidates the Short Term Notes, executed by Lissiak, among others in favor of Stillwater National Bank and Trust ("SNB"), and endorsed over to SW. CR, v. 1 at 221-223, and Suppl. CR, v. 1 at 34-36, 38-40, 42-44.

In spite of Lissiak's attempts to muddy the waters, this is still simply a suit on a debt evidenced by the $2.5 Million Note and the Short Term Notes. *Id*. As shown below, the issues Lissiak attempts to infuse into the discussion are nothing more than an attempt to obfuscate the simple issue of his liability on the debt.

SW's motion for summary judgment was supported by the affidavits of L. Read Mortimer with the $2.5 Million Note as an exhibit ("Mortimer Affidavit"), Anson Lang with the $2.5 Million Note as an exhibit ("Lang Affidavit"), Brent A. Bates with the $2.5 Million Note as an exhibit ("Bates Affidavit") and Kyle A. Owens, and the declaration of Stephen Sakonchick, II. CR, v. 1 at 198-225.

Lissiak filed separate objects to the Mortimer Affidavit, the Lang Affidavit and the Bates Affidavit. CR, v.1 at 245-250 and v. 2 at 251-254. SW filed a single reply addressing those objections. CR, v.3 at 602-610. SW incorporates that reply herein by reference for all purposes.

Lissiak also filed a response to SW's motion for summary judgment ("Response") supported by Lissiak's affidavit ("Lissiak Affidavit"), the affidavit of Lawrence Don ("Don Affidavit") and the declaration of Robert Holmes ("Holmes Declaration"). Suppl. CR, v.1 at 2-217. SW filed comprehensive objections to the Lissiak Affidavit, Don Affidavit and Holmes Declaration, which it incorporates herein by reference for all purposes. CR, v. 3 at 611-619.

The trial court granted the summary judgment requested by SW. CR, v. 3 at 634-645. In the Final Summary Judgment the trial court states that

> "having considered the Motion, the pleadings, summary judgment evidence, and other papers on file herein, [the Court] is of the opinion that the cross-plaintiff's entitled to the summary judgment prayed for in the Motion."

*Id*. at 634. SW's objections to Lissiak's summary judgment evidence, Lissiak's objections to SW's summary judgment evidence, and SW's reply to Lissiak's objections, were part of the other papers on file. CR, v. 1 at 245-250 and v. 2 at 251-254 and v. 3 at 602-610 and 611-619.

**The Trial Court Impliedly Overruled Lissiak's Objections to Sw's Summary Judgment Evidence and Sustained Sw's Objections to Lissiak's Summary Judgment Evidence.**

While the trial court did not explicitly rule on either SW or Lissiak's objections to summary judgment evidence, under Tex. R. App. P. 33.1(a)(2)(A), a trial court's ruling may be express or implied. Since the trial court did not expressly rule on either SW or Lissiak's objections, it impliedly sustained, or overruled the

8

respective objections so as to justify granting SW its summary judgment.

Some courts have applied Rule 33.1 in finding that the trial court implicitly ruled on objections to summary judgment proof. In *Blum v. Julian,* 977 S.W.2d 819, 823 (Tex. App.-Fort Worth 1998, no pet.), the appellee moved for summary judgment, and the appellant objected to the appellee's summary judgment proof. The court of appeals held that, in granting summary judgment, the trial court implicitly overruled the appellant's objections. *Id.* at 823-24.

In *Frazier v. Yu,* 987 S.W.2d 607, 610 (Tex. App.-Fort Worth 1999, pet. denied), the appellee moved for a no-evidence summary judgment and objected to the appellant's summary judgment proof. The court of appeals held that, because the trial court was aware of the appellee's objections and stated in its order that it had reviewed the competent summary judgment proof when it granted the summary judgment, the appellate court could infer that the trial court had implicitly ruled on the objections.

SW could find no cases where this court has treated such implied rulings. However, SW notes other courts have declined to find any such implied rulings. See *Well Solutions, Inc. v. Stafford*, 32 S.W.3d 313, 317 (Tex. App.—San Antonio 2000, no pet.); *Dolcefino v. Randolph*, 19 S.W.3d 906, 926 (Tex. App.—Houston [14th Dist.] 2000, pet. denied).

In this case the implication is that the trial court sustained SW's objections to Lissiak's summary judgment evidence and

9

overruled Lissiak's objections to SW's summary judgment evidence. At least to the extent necessary to warrant granting SW Summary judgment.

However, with defects of substance, no objection is necessary to preserve error and the defect can be raised for the first time on appeal. *Brown v. Brown*, 145 S.W.3d 745, 751 (Tex. App.-Dallas 2004, pet denied). Legal conclusions unsupported by evidence, factual conclusions, opinions and subjective beliefs unsupported by evidence are examples of substantive defects. *Hou-Tex, Inc. v. Landmark Graphics*, 26 S.W.3d 103, 112 (Tex. App.-Houston [14th Dist.] 1986, no writ), *Harley-Davidson Motor Co. v Young*, 720 S.W.2d 211, 213 (Tex. App.-Houston [14th Dist.] 1986, no writ).

**Alternative, Objection to Defects in Lissiak's Summary Judgment Evidence- Brought Forward as Cross-Points**

In the event, this court does not rule that the trial court impliedly sustained SW's objections to Lissiak's summary judgment evidence, then SW raises the following substantive defects in Lissiak's summary judgment evidence as cross-points. In addition, since Lissiak did not bring forward any response or defense to SW's objections to Lissiak's summary judgment evidence, they should be sustained. Tex. R. Civ P. 166a(f), See *Trusty v. Strayhorn*, 87 S.W.3d 756, 762-63 (Tex. App-Texarkana 2002, no pet.) (Rule 166a(f) applies equally to defects in form asserted as grounds for affirmance).

### Defects in Lissiak's Affidavit

SW loan objects to the second sentence in paragraph 15,

paragraphs 19 through 25, 29, the second sentence of paragraph 32, and paragraphs 33 and 34, of the Lissiak Affidavit since Lissiak fails to show how he obtained personal knowledge of the facts, the statements are legal and factual conclusions without evidentiary support, subjective beliefs unsupported by evidence, violate the parole evidence rule and statements attributable to SNB do not refer to any specific individual making the statement or showing that individual had authority to make the statement. *Fair Woman, Inc. v. Transland Management Corp.*, 766 S.W.2d 323 (Tex. App. - Dallas 1989, no writ) (mere recital that affiant has personal knowledge is insufficient, the affidavit must affirmatively demonstrate the manner in which the affiant became personally familiar). *Brownlee v. Brownlee*, 665 S.W.2d 111, 112 (Tex. 1984) (a legal conclusion in an affidavit is insufficient to raise an issue of fact in response to a motion for summary judgment). See *Fulenweider v. City of Teague*, 680 S.W.2d 582, 585 (Tex. App.-Waco 1984, no writ)(Unsubstantiated opinions or testimony-unilateral and subjective determinations of fact do not support summary judgment). *Conte v. Greater Houston Bank*, 641 S.W.2d 411, 414 (Tex. App.- Houston [14th Dist] 1982, writ ref'd n.r.e.)(Parole evidence prohibits admissibility of summary judgement evidence to vary the written contract or show evidence of waiver or estoppel); *Harley Davidson-Motor Co.*, 720 S.W.2d at 211.

**Defects in Don's Affidavit**

SW loan objects to the second sentence in paragraph 16,

11

paragraphs 20 through 26, and paragraphs 28 and 29, of the Don Affidavit since Don fails to show how he obtained personal knowledge of the facts, the statements are legal and factual conclusions without evidentiary support, subjective beliefs unsupported by evidence, violate the parole evidence rule and statements attributable to SNB do not refer to any specific individual making the statement or showing that individual had authority to make the statement. *Fair Woman, Inc.*, 766 S.W.2d 323; *Brownlee*, 665 S.W.2d at 112; Fulenweider, 680 S.W.2d at 585; *Conte*, 641 S.W.2d at 414; *Harley Davidson-Motor Co.*, 720 S.W.2d at 211.

### Defects in the Holmes Declaration

The Holmes Declaration states the documents attached were produced by various parties in the case in response to discovery requests. The documents attached are a Compromise and Settlement Agreement between SW and Light ("Settlement Agreement") and an Omnibus Agreement dated September 30, 2008.

SW Loan objected to and renews its objection to the use of the Settlement Agreement as summary judgment evidence, since, by its terms it is a confidential agreement, the Settlement Agreement was provided to Mr. Holmes under a written agreement that he hold the document as confidential (CR, v. 3 at 619) and Mr. Holmes has breached that agreement by submitting the Settlement Agreement as summary judgment evidence. SW Loan also objects to the use of Exhibits E-J of the Don Affidavit and the Omnibus Agreement since Holmes fails to identify the party that produced the agreement.

12

His statement that the documents were produced by various parties in the lawsuit in response to discovery requests is an unsubstantiated factual conclusion or subjective belief unsupported by evidence.   Harley-Davidson Motor Co., 720 S.W.2d at 213, Fulenweider, 680 S.W.2d at 585.

**Elements for a Suit on a Note**

To prevail on a summary judgment motion on a note, a party seeking to enforce a note must prove (1) the note in question, (2) that the party sued signed the note, (3) that the plaintiff is the owner or holder of the note, and (4) that a certain balance is due and owing on the note. *SMS Fin., LLC v. ABCO Homes, Inc.,* 167 F.3d 235, 238 (5th Cir. 1999); *Bean v. Bluebonnet Sav. Bank FSB,* 884 S.W.2d 520, 522 (Tex. App.-Dallas 1994, no writ)*; Clark v. Dedina,* 658 S.W.2d 293, 295 (Tex. App.-Houston [1st Dist.] 1983, writ dism'd)*.*

**Summary Judgment Evidence to Prove Up a Note**

The law dealing with affidavits necessary to prove up a debt evidenced by a note is well established.   What follows in this section of the brief, is the case law supporting SW's summary judgment evidence presented in the form of affidavits.

Testimony in an affidavit that a particular person or entity owns a note is sufficient to conclusively establish ownership even in the absence of supporting documentation if there is no controverting summary judgment evidence. *First Gibraltar Bank, FSB v. Farley,* 895 S.W.2d 425, 428 (Tex. App.--San Antonio 1995, writ

13

denied); *Christian v. University Federal Savings,* 792 S.W.2d 533, 534 (Tex. App.--Houston [1st Dist.] 1990, no writ).

A photocopy of a note attached to the affidavit of the holder, who swears that it is a true and correct copy of the note, is sufficient as a matter of law to prove the status of owner and holder of a note absent controverting summary judgment evidence. *Zarges v. Bevan,* 652 S.W.2d 368, 369 (Tex. 1983); *First Gibraltar Bank*, 895 S.W.2d at 428.

Production of the note attached to and authenticated by the affidavits, is sufficient to prove the signature and authority of the agent in the absence of a specific verified denial. Tex. Bus & Comm Code Section 3.308; Tex. R. Civ. P. 93(7); *Holland v. First Nat. Bank in Dallas*, 597 S.W.2d. 408, 411 (Tex. Civ. App.-Dallas 1980, writ dism'd).

Absent such a verified pleading, the document is received into evidence as fully proved. *Boyd v. Diversified Fin. Sys.*, 1 S.W.3d 888, 891 (Tex. App-Dallas 1999, no pet).

A statement by an officer as to the total amount of principal and interest due, without more, is all that is required for SW Loan to prevail on summary judgment. *Thompson v. Chrysler First Bus. Credit*, 840 S.W.2d 25, 28 (Tex. App.-Dallas 1992, no writ history) (A statement of the balance due will support a motion for summary judgment); *Atchley v. NCNB Texas National Bank*, 795 S.W.2d 336, 337 (Tex. App.-Beaumont 1990, writ denied) (It was not necessary to prove method of calculation of interest to recover on debt); and

14

*Trans-Continental Finance v. Summit National Bank*, 761 S.W.2d 575, 577 (Tex. App.-Ft. Worth 1988, no writ history) (affidavit of bank officer as to default, total principal and interest due on note, sufficient to support summary judgment).

A summary judgment may be based on uncontroverted testimonial evidence of an interested witness if the evidence is clear, positive and direct, otherwise credible and free from contradictions and inconsistencies, and could have been readily controverted. Tex. R. Civ. Pro. 166a(c).

An affidavit that makes unchallenged statements that he is an officer and has personal knowledge of the facts sworn to, is fully sufficient to support summary judgment. *Landers v. Texas American Bank*, 788 S.W.2d 162, 165 (Tex. App.-Ft. Worth 1990, no writ).

A person's position or job responsibilities can particularly qualify him to have personal knowledge concerning each of the facts in the supporting affidavit. *Barnam v. Sugar Creek National Bank,* 612 S.W.2d 78, 80, (Tex. App.-Houston [14th Dist] 1981, no writ).

A summary judgment affidavit is admissible, even though the officer was not employed with the bank at the time of relevant events, because the officer was able to gain knowledge of the facts testified to during his employment and the officer's statement of his current position demonstrated how he gained personal knowledge of facts. *Waite v. Banc Texas - Houston, N.A.*, 792 S.W.2d 538, 540 (Tex. App.-Houston [1st Dist.] 1990, no writ).

15

**SW's Summary Judgment Evidence and *Prima Facie* Case on the Note**

SW's motion for summary judgment was supported by the affidavits of L. Read Mortimer with the $2.5 Million Note as an exhibit ("Mortimer Affidavit"), Anson Lang with the $2.5 Million Note as an exhibit ("Lang Affidavit"), Brent A. Bates with the $2.5 Million Note as an exhibit ("Bates Affidavit") and Kyle A. Owens, the declaration of Stephen Sakonchick, II.

Lissiak filed separate objections to the Mortimer Affidavit, the Lang Affidavit and the Bates Affidavit. SW filed a single reply addressing those objections., CR, v. 3 at 602-610. SW incorporates that reply for all purposes in by reference.

Each of the Bates Affidavit, Mortimer Affidavit and Lang Affidavit have attached a copy of the $2.5 Million Note and authenticate it as a business record. Lissiak does not object to the $2.5 Million Note as a business record or the recitations that SW is the owner and holder of the $2.5 Million Note. *First Gibraltar,* 895 S.W.2d at 428, *Christian,* 792 S.W.2d at 534. Each of the exhibits containing the $2.5 Million Note bears the signature of Lissiak and he concedes his signature appears on that note. Suppl. CR, v.1 at 26 (para. 27), Section 3.308 Tex. Bus & Comm Code; Tex. R. Civ. P. 93(7); *Holland*, 597 S.W.2d. at 411; *Boyd*, 1 S.W. 3d at 891.

The Bates Affidavit, Mortimer Affidavit and Lang Affidavit all meet the criteria for an affidavit on a note set out above, since they state the capacity they hold at each respective institution

for the $2.5 Million Note, and how they obtained personal knowledge of the facts each recites. Tex. R. Civ. Pro. 166a(c); *Landers*, 788 S.W.2d at 165; *Barnam*, 612 S.W.2d at 80. Since they gained knowledge of these facts during their respective employment they are admissible. *Waite*, 792 S.W.2d at 540. The Lang affidavit also sets out the amount of the debt owed. *Thompson*, 840 S.W.2d at 28; *Atchley*, 795 S.W.2d at 337; and *Trans-Continental*, 761 S.W.2d at 577.

The Bates, Mortimer and Lang affidavits clearly prove (a) the $2.5 Million Note, (b) that Lissiak signed the $2.5 Million Note, as evidenced by his signature on the $2.5 Million Note (c) that SW is the current owner and holder of the $2.5 Million Note, and (d) the balance due and owing on the $2.5 Million Note. CR, v.1 at 219-223, 208-212 and 213-218. The trial court had before it a *prima facie* case on Lissiak's liability on the debt evidenced by the $2.5 Million Note and Short Term Notes and the amount owed on that debt.

**Restated Issue No. 1- The trial court did not err in granting SW summary judgment since there were no genuine issue of material fact.**

SW's competent summary judgment evidence made a *prima facie* case on Lissiak's liability on the debt evidenced by the $2.5 Million Note and Short Term Notes, and the amount of that liability. What Lissiak starts addressing in his first issue are some of his affirmative defenses.

17

**Issue 1a-Holder Status**

SW is the owner and holder of the $2.5 Million Note.  SW has never asserted it was a holder in due course since the note had matured and past due when SW acquired the $2.5 Million Note.  The fact that SW is simply a holder is not a material fact since SW, as the owner and holder of the $2.5 Million Note, established the debt and Lissiak's liability on the debt as a matter of law.

**Issue 1b-Lissiak's Signature on the $2.5 Million Note**

In contesting the genuineness of his signature on the $2.5 Million Note, Lissiak simply states "I do not recollect signing that note and dispute the validity of the signature on the note." CR. v.3, p. 426, para. 26.  This a similar statement to the one contained in Lissiak's verified answer (Lissiak does not recall executing that instrument and disputes that his signature on the note is genuine). CR. v.1, p. 242.  That statement is insufficient to meet the requirements of Tex. R. Civ. P. 93(7).  That rule requires that Lissiak have denied the execution of the instrument in writing.

What Lissiak needed to say, and what he did not say, to put his execution of the $2.5 Million Note in issue was "I did not sign that note and that is not my signature on it."  This he has not done, nor has he supported such a claim with competent summary judgment evidence.  Lissiak never says he did not sign the $2.5 Million Note, just that he did not recall signing it and disputes the validity of the signature. Lissiak's statement is insufficient

to constitute an affirmative defense under Tex. R. Civ. P. 93(7).

Lissiak admits that his signature appears on the $2.5 Million Note. Suppl. CR, v. 1 at 26 (para. 27). SW has produced the $2.5 Million Note as an authenticated business record, for which there was no contravening evidence. That $2.5 Million Note clearly reflects Lissiak's unique signature. That same unique signature is also contained many times in the trial court record on Lissiak's amended answers and on several other notes attached to Lissiak's summary judgment response. CR, v. 1 at 226-232, 237-244, and Suppl. CR, v. 1 at 34-36, 38-40 and 42-44.

The $2.5 Million Note, by its terms, is to be construed in accordance with Oklahoma law. CR, v. 1 at 216-218. In *State Bank of Grove v. North*, 418 P.2d 928 (Okla. 1966), the defendant filed a verified denial and affirmative defenses addressing execution of the note. At trial, the plaintiff, proved up the note with the signature of defendant. The defendant did not object to the introduction of the note in evidence on the grounds it was not properly executed. He did, however, reserve the right to question its authenticity. The Oklahoma court in that case found sufficient evidence to rule in favor of plaintiff on the note.

In this case, Lissiak did not object to SW's introduction of the $2.5 Million Note, bearing his signature, as summary judgment evidence through the Bates, Mortimer and Lang Affidavits, as a business record or on any other grounds. Therefore, the $2.5 Million Note was in summary judgment evidence as it currently

19

exists, bearing Lissiak's signature, without objection, with his admission that his signature appears on that note.

Also, it is important to note that Lissiak was sued on a debt evidenced by a note.  The $2.5 Million Note, by its terms, is in renewal and consolidation of the Short Term Notes.  Lissiak admits that he signed all of the Short Term Notes.  As a result he admits to liability on the debt evidenced by those notes.

In *Schwab v. Schlumberger Well Surveying Corp.,* 198 S.W.2d 79 (Tex. 1946), the Texas Supreme Court stated:

> "The giving of a new note for a debt evidenced by a former note does not extinguish the original indebtedness unless such is the intention of the parties. Such intention is never presumed. The burden of proving the discharge or novation is therefore upon him who asserts it. In general the renewal merely operates as an extension of time in which to pay the original indebtedness. The debt is not thereby increased. It remains the same; it is in substance and in fact the same indebtedness evidenced by a new promise."

Id., at 82.  These rules also appear to apply even if the holder or owner of the note marks the previous notes "paid").  See *Bank of Austin v. Barnett*, 549 S.W.2d 428 (Tex. Civ. App.-Austin 1977, no writ).

Lissiak did not produce any competent summary judgment evidence in the trial court that the $2.5 Million Note was a novation of the Short Term Notes.  In fact, the terms of the $2.5 Million Note states it is to consolidate and extend the maturity dates of the Short Term Notes.  As a result, even in the unlikely event the $2.5 Million Note is successfully challenged, SW still prevails on Lissiak's liability on the debt reflected by the Short

Term Notes.

**Issue 1c-Consideration**

Lissiak's complaint on consideration applies to the Short Term Notes. However, to get to that complaint, the trial court had to first consider the objections to the Lissiak and Don Affidavits. Under Tex. R. App. P. 33.1(a)(2)(A), the trial court impliedly sustained SW's objections to those affidavits, at least to the extent necessary to grant SW its summary judgment. Since Lissiak did not complain about those rulings of the trial court, they alone should stand and eliminate Lissiak's argument on the failure of consideration.

In examining the Short Term Notes, there is nothing in the terms of those notes which require that Lissiak, or the other note signatories have use of the proceeds or direct the disbursement of proceeds from the advance. Suppl. CR, v.1 at 34-36, 38-40 and 42-44. All of the Short Term Notes contain the same provision:

> "Advancements and payments hereunder may, at the option of the Lender, be recorded on this note or on the books and records of the Lender and will be prima facie evidence of said advances, payment and the unpaid balance of this Note."

Suppl. CR, v.1 at 34, 38 and 42. None of the competent summary judgment evidence controverts the *prima facie* evidence created under the express terms of the Short Term Notes. As a result, Lissiak's claim on the failure of consideration fails.

In addition, as Lissiak states in his brief "[b]ecause there is a presumption the Short Term Notes were supported by consideration, the burden was on Lissiak, to show none was actually

21

received, thus there was a failure of consideration." Appellant Brief, p. 20.

It is well settled Texas law that a person who signs renewals of notes on which he was aware of defenses, waives those defenses, such as fraud and consideration, and is estopped to assert them. *Hunter v. Lanius,* 82 Tex. 677, 18 S.W. 201 (1892); *Gaylord Container Division of Crown Zellerbach Corporation v. H. Rouw Company*, 392 S.W.2d 118, 120 (Tex. 1965); *City of Houston v. Lyons Realty Ltd*, 710 S.W.2d 625, 629 (Tex. App.-Houston, 1986, no writ).

Lissiak states in is affidavit supporting his response to the motion for summary judgment, he executed the original $1.2 million note on February 20, 2008, the $500,000.00 note on March 28, 2008 and the $800,000.00 note on July 7, 2008. Suppl, CR. v. 1 at 24-27, paras. 16 and 17. The $1.2 million was renewed on June 19, 2008 and the $500,000.00 note was also renewed on June 19, 2008. Id., at para.18; Suppl. CR, v. 1 at 46.

All three of the Short Term Notes were again renewed by the $2.5 Million Note. CR, v.1 at 221-223. Lissiak was aware of his defense of failure of consideration when the funds were advanced on the original Short Term Notes. Suppl. CR, v.1 at 26, para. 23.

Lissiak was aware of these defenses when he renewed the $1.2 million and $500,000.00 notes and later renewed all of the Short Term Notes into the $2.5 Million Note, and waived the defense of failure of consideration to the Short Term Notes and is estopped to assert those defenses as a matter of law. See *City of Houston*, 710

22

S.W.2d at 629.

**Issue 1d-Cancellation of Note**

This issue deals with Light's execution of renewals of the $2.5 Million Note without the joinder of Lissiak. This argument fails because Lissiak has failed to provide competent summary judgment evidence that Light's signing the Renewal Notes created a novation, and under the express terms of the $2.5 Million Note and the Short Term Notes, such renewals were permitted without releasing Lissiak from liability on the underlying debt.

Subject to the objection on the use of the Settlement Agreement and its attachments, Section 3.401 of the Texas Business & Commerce Code simply provides that a person is not liable on an instrument he does not sign. Here Lissiak is being sued on a debt evidenced by the $2.5 Million Note and Short Term Notes. The $2.5 Million Note brought forward the existing debt evidenced by the Short Term Notes, all of which Lissiak signed. See *Priest v. First Mortgage Company of Texas, Inc.*, 659 S.W.2d 869, 871 (Tex. Civ. App.-San Antonio 1983, writ ref'd n.r.e.).

Lissiak is not being pursued on the Renewal Notes. He is being pursued on the $2.5 Million Note and the Short Term Notes. Where renewal notes or extensions are involved, the holder may sue either on the renewal note, here the $2.5 Million Note, or on the original note, here the Short Term Notes. *Villareal v. Laredo Nat'l Bank,* 677 S.W.2d 600, 607 (Tex. App.--San Antonio 1984, writ ref'd n.r.e.); *Smith v. First Pasadena State Bank,* 401 S.W.2d 123, 127

23

(Tex. App.--Houston [1st Dist.] 1966, no writ).

The burden of proving discharge or novation is on the party asserting it. Schlumberger, 198 S.W.2d at 82. As with most of Lissiak's claims, he cites a proposition of law and a legal conclusion without supporting evidence. Lissiak has failed to provide competent summary judgment proof on a discharge of novation of the debt evidenced by the $2.5 Million Note and Short Term Notes. The Renewal Notes, by their express terms, provides it is not in payment, but in renewal and restating the $2.5 Million Note and the subsequent Renewal Notes signed by Light

More importantly, each of the Short Term Notes and the $2.5 Million Note contain the following language at the last paragraph on the second page of each note:

> "The makers, endorsers, sureties, guarantors and all other persons who may become liable for all or any part of this obligation severally waive presentment for payment, protest and notice of nonpayment. Said parties consent to any extension of time (whether one or more) of payment hereof, release of all or any part of the security for the payment hereof or release of any party liable for the payment of this obligation. Any such extension or release may be made without notice to any such party and without discharging such party's liability hereunder."

Suppl. CR, v.1 at 34-36 , 38-40 , 42-44  and CR, v.1 at 221-223.

Such an agreement in a note is valid and enforceable and subsequent renewals of the original note with such language is not a material alteration of the original obligation. See *C&G Coin Meter Supply Corp. v. First National Bank*, 413 S.W.2d 151, 154 (Tex. Civ. App.-Eastland 1967, writ ref'd n.r.e.). An alteration is material only if it changes the legal effect of the contract.

24

*First State Bank v. Kellman*, 851 S.W.2d 914, 920 (Tex. App.-Austin 1993, writ denied).

The fact that Lissiak did not sign the Renewal Notes or even be consulted about them, is immaterial to his liability on the debt evidenced by the $2.5 Million Note and the Short Term Notes. Lissiak has also failed to show how he is harmed by Light signing the Renewal Notes. As a result, there is no genuine issues of material fact on Lissiak's affirmative defense of cancellation of the debt to defeat the summary judgment granted SW.

**Issue 1e-Estoppel**

Lissiak's statement on estoppel here is brief and relies on the portions of the Lissiak summary judgment evidence on which the trial court impliedly sustained SW's objections to it, or which is alternatively addressed above as cross-points. To the extent, Lissiak affidavit testimony even survives SW's objections, Lissiak has failed to adequately brief equitable estoppel and show competent summary judgment evidence to support all of its elements.

While Lissiak states what estoppel does, he does not brief the elements of the claim here, how SW is estopped by the acts of SNB, or how the facts establish the defense of estoppel. The elements of equitable estoppel are:

1.  the plaintiff made a false representation to, or concealed a material fact from, the defendant;

2.  the plaintiff intended that its representation or concealment be acted upon;

3.  the plaintiff knew or had the means of knowing the real facts;

25

4.   the defendant neither knew or had the means of knowing the real facts; and

5.   the defendant acted the representation or concealment to its detriment.

*Johnson & Higgins, Inc. v. Kenneco Energy*, 962 S.W.2d 507, 515-16 (Tex. 1998).

Appellant's Brief here not only fails to identify the elements of equitable estoppel and how the facts meet all of the elements, but the facts stated in the Lissiak Affidavit cited (paragraphs 19-21 of the Lissiak Affidavit, Suppl. CR, v.1 at 25-26) do not support the statements in his brief. Specifically, the statement as to SNB that:

> "SNB promised Appellant and the other co-makers of the Short Term Notes that if Appellant and the co-makers would sign the Short Term Notes in their individual capacities, SNB would: (1) disburse the funds advanced on the Short Term Notes to the co-makers for their use on the Project as the co-makers deemed fit in their sole discretion, as set forth in the Short Term Notes",

is simply not found in Lissiak's summary judgment evidence. The remaining statement, alone, does not meet all of the elements of equitable estoppel and this defense fails.

**Restated Issue No. 2- The trial court did not err in granting SW summary judgment since there was no genuine issue of material fact on the elements of SW's claims.**

**Issue 2a-SW is a Holder**

SW incorporates the same argument set out in its response to Issue 1a above, here.

**Issue 2b-Lissiak's Signature on the $2.5 Million Note**

SW incorporates the same argument set out in its response to

26

Issue 1b above, here.  As set out in that briefing, Lissiak simply did not deny the execution of the $2.5 Million Note.  He simply alleged, that he did not recall signing the $2.5 Million Note and challenged the genuineness of his signature.  The affirmative defense under Tex. R. Civ. P. 93(7) applies to the denial of the execution of a written instrument.

Furthermore, SW cross-claimed for the recovery of a debt.  Even in the event the $2.5 Million Note is not enforceable, the debt is still evidenced by the Short Term Notes.  *Schlumberger,* 198 S.W.2d at 82.  SW can sue on the renewal note, the $2.5 Million Note, or the original notes, the Short Term Notes.  *Villareal,* 677 S.W.2d at 607; *Smith,* 401 S.W.2d at 127.  In addition, the alleged facts that Lissiak was no longer a partner, member or participant of Stretford Project when the $2.5 Million Note was executed or the fact that he did not sign the Omnibus Agreement are irrelevant to his signing the $2.5 Million Note and his liability under it or the Short Term Notes.  The $2.5 Million Note is an integrated agreement.  CR, v.1 at 221-223.

As a result, there is no genuine issue of material fact as to Lissiak's liability on the debt evidenced by the $2.5 Million Note, his signing of that note or his liability on the same debt as evidenced by the Short Term Notes.

**Issue 2c-Consideration**

SW incorporates the same argument set out in its response to Issue 1c above, here.  As set out in that briefing, the fact that

Lissiak did not personally receive any funds on the Short Term Notes is not a fact issue as to his liability on the debt. All that is required is that SNB advanced the funds. The terms of the Short term Notes cited above establishes SNB's record of the advances as *prima facie* evidence of them which Lissiak has not overcome. Lissiak would not have received any funds on the $2.5 Million Note, since it was a renewal and consolidation of the Short Term Notes.

In addition, Lissiak's continued signing of renewals of the original Short Term Notes, waived any defense of failure of consideration. *Rouw*, 392 S.W.2d at 120. The fact that Lissiak did not receive any advances on the Short Term Notes does not defeat the *prima facie* evidence that the advances were made under the terms of those notes, and no advances would have been made under the $2.5 Million Note since it was a renewal of the Short Term Notes.

As a result, there is competent summary judgment evidence to create a genuine issues of material fact on Lissiak's affirmative defense of failure of consideration on the Short Term Notes to defeat the summary judgment granted SW.

**Restated Issue No. 3- The trial court dd not err in granting SW summary judgment since there was no competent summary judgment proof submitted by Lissiak to create a genuine issue of material fact on the elements of Lissiak's affirmative defenses.**

As stated in Appellant's Brief, the burden is on the party opposing summary judgment, here Lissiak, to come forward with competent summary judgment proof sufficient to raise an issue of

fact on each element of an affirmative defense in order to defeat summary judgment. See *Brownlee*, 665 S.W.2d at 112. The problem here is that Lissiak failed to provide competent summary judgment evidence on all of the elements of any of his affirmative defenses.

**Issue 3a-SW is a Holder**

SW incorporates the same argument set out in its response to Issue 1a above, here. SW only needs to be a holder to prevail on summary judgment and Lissiak has not alleged a genuine affirmative defense on it to preclude summary judgment in favor of SW.

**Issue 3b-Lissiak's Signature on the $2.5 Million Note**

SW incorporates the same argument set out in its response to Issue 1b and 2b above, here. As set out in that briefing, Lissiak simply did not meet the requirements of an affirmative defense under Tex. R. Civ. P. 93(7). SW also sued on a debt which were also evidenced by the Short Term Notes.

Also as previously stated, the alleged facts that Lissiak was no longer a partner, member or participant of Stretford Project when the $2.5 Million Note was executed or the fact that he did not sign the Omnibus Agreement are irrelevant to his signing of the $2.5 Million Note, the Short Term Notes and his liability under them.

As a result, there is no genuine issue of material fact as to Lissiak's liability on the debt evidenced by the $2.5 Million Note, his signing of that note or his liability on the same debt as evidenced by the Short Term Notes.

29

**Issue 3c-Consideration**

SW incorporates the same argument set out in its response to Issue 1c and 2c above, here.  As a result, there is competent summary judgment evidence to create a  genuine issues of material fact on Lissiak's affirmative defense of failure of consideration on the Short Term Notes to defeat the summary judgment granted SW.

**Issue 3d-The Debt was Not Cancelled by the Renewal Notes**

SW incorporates the same argument set out in its response to Issue 1d and 1b above, here. It is axiomatic that Lissiak is not liable on agreements he did not sign.  However, the renewal notes that were only signed by Light, while extending the maturity date, did not release Lissiak from his liability on the debt evidenced by the $2.5 Million Note and the Short Term Notes.  There is nothing in the language of any of the Renewal Notes that releases Lissiak from Liability on the  $2.5 Million Note and the Short Term Notes.  Nor is there anything in the Renewal Notes that creates a novation. Suppl. CR, v. 1 at 91-93.

The sole location of any evidence alleged by Lissiak to support the argument in this issue are contained in or attached to the Settlement Agreement.  Mr. Holmes breached a written agreement on confidentiality to even include the Settlement Agreement in the Record.  As a result, SW objected to the use of the Settlement Agreement and attachments in the trial court, which may have been impliedly granted.  SW has also raised the use of the Settlement Agreement as a cross-point above.  SW requests this court honor

that written confidentiality agreement and not consider any of the evidence referred to from it.

In any event, SW can sue on the renewal note, the $2.5 Million Note, or the original notes, the Short Term Notes. *Villareal,* 677 S.W.2d at 607; *Smith,* 401 S.W.2d at 127. Even if the Short Term Notes were marked paid. See *Bank of Austin*, 549 S.W.2d 428.

However, contrary to Lissiak's claim at page 27 of Appellant's Brief that the Short Term Notes were to be marked paid, there was no such action taken and there is no summary judgment evidence to support this allegation. Lissiak cites generally to the Settlement Agreement. Suppl. CR, v.1 at 65-167. Paragraph 7 of the Settlement Agreement provides that after certain conditions are met SW would deliver to Light, through his attorney "the promissory notes, guaranties and lost note affidavits listed as items A through F and J through P on Exhibit 1 marked paid." Suppl. CR, v.1 at 68. However the Short Term Notes are not a part of that Exhibit 1. Suppl. CR, v.1 at 75-76.

In addition that section of the Settlement Agreement provides that "in no event shall delivery of Item A on Exhibit 1 [$2.5 Million Note] be required before litigation os SW Loan's claims against Lissiak, including any appeals is concluded." Suppl CR, v.1 at 69-69. The parties to the Settlement Agreement clearly considered the instant litigation against Lissiak.

The fact that Lissiak did not sign the Renewal Notes or even be consulted about them, is immaterial to his liability on the debt

31

evidenced by the $2.5 Million Note and the Short Term Notes. The There is also no summary judgment evidence that the Short Term Notes were marked paid. Lissiak has also failed to show how he is harmed by Light signing the Renewal Notes.

As a result, there is no genuine issues of material fact on Lissiak's affirmative defense of cancellation of a debt instrument to defeat the summary judgment granted SW.

**Issue 3e-Promissory Estoppel**

SW incorporates the same argument set out in its response to Issue 1e above, here. Similarly, Lissiak's statement on promissory estoppel is brief and relies on the portions of the Lissiak summary judgment evidence from both the Lissiak and Don Affidavits, on which the trial court impliedly sustained SW's objections to it, or which is alternatively addressed above as cross-points. The sections referenced to in the Lissiak and Don Affidavits suffer from the substantive defects of being legal and factual conclusions without evidentiary support, subjective beliefs unsupported by evidence, violate the parole evidence rule and statements attributable to SNB do not refer to any specific individual making the statement or showing that individual had authority to make the statement. As such they are simply not competent summary judgment evidence. *Brownlee*, 665 S.W.2d at 112; Fulenweider, 680 S.W.2d at 585; *Conte*, 641 S.W.2d at 414; *Harley Davidson-Motor Co.*, 720 S.W.2d at 211.

Subject to SW's objection to Lissiak's summary judgment

32

evidence cited to support this issue, and to the extent, the Lissiak affidavit testimony even survives SW's objections, Lissiak has failed to adequately brief promissory equitable estoppel and show competent summary judgment evidence to support all of its elements. Specifically, Lissiak fails to show competent summary judgment evidence that SNB made a false representation or concealed a material fact from Lissiak, SNB intended the representation or concealment to be acted upon by Lissiak, when the alleged representations or concealment occurred (i.e. before or after the execution of the $2.5 Million Note); who specifically made the alleged representations and some evidence he or she had the authority to make them, or what specific damages were suffered by Lissiak, since he had already signed the Short Term Notes and was liable for the debt they evidenced. Suppl. CR, v.1 at 25, para. 15 (first sentence only), 16 and 17. See *Johnson & Higgins*, 962 S.W.2d at 515-16.

Most importantly, Lissiak fails to provide any evidence of a time line for the alleged representations and the indication is they were allegedly made after the execution of the Short Term Notes. In any event, any such reliance would gave been waived by the doctrine of renewal on promissory notes when the $2.5 Million Note was executed by Lissiak  Rouw, 392 S.W.2d at 120.

As a result, there is no genuine issue of material fact as to SNB allegedly represented the Short Term Notes would be paid by new notes to Stretford, Lissiak relied on the representation, or that

he relied on the alleged representations to his injury to support the affirmative defense of promissory estoppel.

**Restated Issue 3f-There was No Material Alteration or Cancellation by Payment Extension**

SW incorporates the same argument set out in its response to Issue 1d, 1b and 3d above, here.  Here again, Lissiak cites law but provides no competent summary judgment evidence to support his allegations or the factual and legal conclusions they contain.

Lissiak signed and is liable on the debt evidenced by the Short Term Notes as renewed and consolidated into the $2.5 Million Note.  *Schlumberger,* 198 S.W.2d at 82.  Lissiak fails to show the alleged material alteration of the Short Term Notes in his first element.  Just what document(s) is he claiming materially altered the notes.  The Short Term Notes were renewed and consolidated into the $2.5 Million Note which he signed.  His element is simply incomplete and not supported by his references to the Lissiak and Don Affidavits.

Lissiak was not required to be consulted on any renewal and extension of the Short Term Note and $2.5 Million Note under the contractual terms in those notes.  Suppl. CR, v.1 at 35 (last paragraph), 39 (last paragraph), 43 (last paragraph)  and CR, v.1 at 222 (last paragraph).  Subsequent renewals of the original note with such terms is not a material alteration of the original obligation.  See *C&G Coin Meter Supply Corp.*, 413 S.W.2d at 154.

Lissiak also fails to show by competent summary judgment evidence how he was harmed by the renewal of the same obligation

34

contained in the Short Term Notes and the $2.5 Million Note by the Renewal Notes or how the renewals were to his detriment. Simply stating a legal and factual conclusion does not satisfy the element necessary for a claim of material alteration or cancellation of the indebtedness. In addition, Lissiak cites to no case law or statute which provides that such a renewal of a loan obligation, such as exists here, is a material alteration of the underlying contract.

Therefore, no genuine issue of material fact exists as to the alleged affirmative defense of material alteration of a contract or cancellation of the indebtedness.

**Restated Issue 3g-Section 3.605, Texas Business and Commerce Code, There is no Discharge of Liability**

SW incorporates the same argument set out in its response to Issue 1d, 1b, 3d and 3f above, here. Lissiak's allegations on this issue also rely on the Lissiak and Don Affidavits, in addition to the $2.5 Million Note and the Settlement Agreement. Those portions off the Lissiak and Don Affidavits were impliedly overruled by the trial court and Lissiak has not brought those issues forward. In addition, SW brings forward its objections to those sections of the Lissiak and Don Affidavits by Cross-point. SW realleges its claim as to the implied sustaining of its objections to those provisions of the Lissiak and Don Affidavits and the Settlement Agreement, as well as the cross-points on those items.

Subject to these restated objections, while referring to Section 3.605 of the Texas Business Code ("Section 3.605"), Lissiak seems to argue that section somehow justifies an alleged material

35

breach of contract. However, Section 3.605 does not apply to the facts of this case. That section deals with secondary obligors and the effect on collateral when a creditor deals with a primary obligor. Lissiak is a primary obligor on the Short Term Notes and $2.5 Million Note, and there is no collateral involved with them. Suppl. CR, v.1 at 34-36 , 38-40 , 42-44 and CR, v.1 at 221-223.

A "secondary obligor" is "an obligor to the extent that (A) the obligor's obligation is secondary, or (B) the obligor has a right of recourse with respect to an obligation secured by collateral against the debtor, another obligor, or property of either." Tex. Bus. & Com. Code Section 9.102(a)(72). The Uniform Commercial Code definition of "surety" includes "a guarantor or other secondary obligor." Tex. Bus. & Com. Code Section 1.201(b)(39).

As set out in *Gibralter Savings Association v. Watson*, 624 S.W.2d 650 (Tex. App.-Houston [14th Dist.] 1981 no writ):

> "The Texas courts have not as yet had occasion to discuss this aspect of the statute [Section 3.605] requiring the cancellation or renunciation of a negotiable instrument be done intentionally, Courts in other jurisdictions have held that under this section of the Uniform Commercial Code, the actions of the payee must have been intentional in order to constitute a discharge of the obligor. *People's Bank of South Carolina, Inc. v. Robinson,* 272 S.C. 155, 249 S.E. 2d 784 (1978); *First Galesburg Nat. Bank, Etc. v. Martin*, 58 Ill. App. 3d 113, 15 Ill. Dec. 603, 373 N.E.2d 1075 (1978)."

Id., at 653. See also Bank of Austin, 549 S.W.2d at 430 citing *Slaughter v. Philadelphia National Bank,* 290 F.Supp. 234 (E.D. Pa. 1968), and *Mid-Eastern Electronics, Inc. v. First National Bank of Southern Maryland*, 7 UCC 1089 (4th Cir. 1970). There is no

36

competent summary judgment evidence that either SNB or SW took any action intended to constitute a discharge of Lissiak on the debt evidenced by the $2.5 Million Note or the Short Term Note.

There is also no material breach of contract. The contract between SW and Lissiak is based on the Short Term Notes and the $2.5 Million Note. Suppl. CR, v.1 at 34-36 , 38-40 , 42-44 and CR, v.1 at 221-223. They are integrated written agreements. Lissiak defaulted on those notes by failing to pay the debt evidenced by them after it matured, as shown by SW's competent summary judgment evidence. Lissiak has failed to show that either SW or SNB breached any of the terms of those notes.

Lissiak's assertions that there was an agreement to roll the Short Term Notes into the Stretford, SNB and Light conspired to keep Lissiak liable by renewal of the Short Term Notes and $2.5 Million Note, instead of rolling the debt into the Stretford, and that any agreement would have left Light solely liable on those obligations, are not supported by competent summary judgment evidence. Those statements do not create genuine issues of material fact supporting the affirmative defense and the summary judgment evidence referred to in the Lissiak and Don Affidavits (Suppl. CR, v.1 at 26 (paras. 20 and 21) and 31 (paras. 19, 20 and 21) contain substantive defects that violate the parole evidence rule, are legal and/or factual conclusions without evidentiary support, subjective beliefs unsupported by evidence, statements attributable to SNB do not refer to any specific individual making

37

the statement or showing that individual had authority to make the statement, and not competent summary judgment evidence. *Brownlee*, 665 S.W.2d at 112; Fulenweider, 680 S.W.2d at 585; *Conte*, 641 S.W.2d at 414; *Harley Davidson-Motor Co*., 720 S.W.2d at 211.

Lissiak has failed to show a genuine issue of material fact on all of the elements of a defense under Section 3.605 and, in fact, that section is inapplicable to the facts of this case. There has been no release of Lissiak on the debt evidenced by the $2.5 Million Note and the Short Term Notes and Lissiak has failed to prove a novation as to any of them.

**Restated Issue No. 4- The trial court did not err in granting SW summary judgment since SW presented competent summary judgment evidence on the elements of its claims.**

Lissiak filed separate objections to the Bates, Mortimer, and Lang Affidavits supporting SW's Motion for Summary Judgment. CR, V.1 at 245-248 and 249-250, and v.2 at 251-252 and 253-254. SW filed a single response addressing those objections., which it has incorporated by reference into this brief. CR, v.3 at 602-610.

Each of the Bates, Mortimer and Lang Affidavits have attached a copy of the $2.5 Million Note and authenticate it as a business record. CR, v. 1 at 219-223, 208-212 and 213-218. The exhibits to those affidavits contain the $2.5 Million Note bears the signature of Lissiak. CR, v.1 at 221-223, 210-212 and 216-218.

Lissiak's objections to the Bates Mortimer and Lang Affidavits seems to center on those portions of the affidavits which assert Lissiak signed the $2.5 Million Note and contain no

38

evidence of the failure of consideration alleged by Lissiak. As to the item on the alleged failure of consideration, Lissiak has that burden reversed. Lissiak alleged failure of consideration, addressed above as Issue 1c. It is Lissiak's burden to prove by competent summary judgment evidence all of the elements to make a *prima facie* case on failure of consideration, *Brownlee*, 665 S.W.2d at 112. SW does not have to negate the defense until such a *prima facie* case was made, which was not.

Lissiak does not object to the admission of the $2.5 Million Note as competent summary judgment evidence as a business record. That note is proved up as a business record in all of the Bates, Mortimer and Lang Affidavits. CR, v. 1 at 219-223, 208-212 and 213-218. Lissiak also admits in his affidavit that his signature appears on the $2.5 Million Note attached to the Lang Affidavit. Suppl. CR, v.1 at 24-27 (first sentence in para. 27).

Lissiak's objections to the Bates, Mortimer and Lang affidavits are addressed *seriatim* below.

### Objection to the Bates Affidavit

Mr. Bates states in his affidavit that he is a custodian of the records for SNB, he has knowledge of the manner records are kept at SNB and attached is a true and correct copy of the $2.5 Million Note signed by Lissiak, Don and Light. CR., v.1 at 219. Tex. R. Civ. Evid. 902(10); Tex. R. Civ. Pro. 166a(c); *Landers*, 788 S.W.2d at 165; *Barnam*, 612 S.W.2d at 80; *Waite*, 792 S.W.2d at 540. The copy of the $2.5 Million Note attached to and authenticated by

the Bates Affidavit, bears the signatures of Lissiak, Don and Light, with their respective names printed under their signature. CR, v. 1 at 221-223; Tex. Bus & Comm Code Section 3.308; Tex. R. Civ. P. 93(7); *Holland*, 597 S.W.2d. at 411.

In his brief Lissiak objects to the portion of the Bates affidavit that states "signed by Victor Lissiak, Jr., Lawrence C. Don and J. Randolph Light" claiming the statement is conclusory. Extrinsic evidence of authenticity as a condition precedent to admissibility is not required with respect to business records accompanied by affidavit. Tex. R. Civ. Evid. 902(10).

The Bates Affidavit contains all of the requisite information for the attached copy of the $2.5 Million Note to be received into evidence as a business record of SNB, who maintains a true and correct copy of the $2.5 Million Note, as part of its business. The statement that Lissiak signed the $2.5 Million Note is based on the authenticated copy of the $2.5 Million Note attached bearing the signatures of Lissiak, Don and Light, and is a statement of fact.

The statements in the Bates Affidavit are not conclusory and his testimony in his affidavit and the $2.5 Million Note attached to it are competent summary judgment evidence.

**Objections to the Mortimer Affidavit**

Mr. Mortiner states he is a vice president of SW and charged with the collection of a debt owed to SW by Lissiak. Mr. Mortiner's testimony is admissible since he gained knowledge of the

40

facts testified to during his employment, and the facts are also admissible as a common law exception to the hearsay rule. Tex. R. Civ. Pro. 166a(c); *Landers*, 788 S.W.2d at 165; *Barnam,* 612 S.W.2d at 80; *Waite*, 792 S.W.2d at 540. His statement that he is a vice president of the owner and holder of the $2.5 Million Note and charged with its enforcement, adequately shows how he gained personal knowledge of the facts. *Id.*

The statement in the Mortimer Affidavit that the $2.5 Million Note was signed by Lissiak is a statement of fact determined from the $2.5 Million Note, a copy of which is attached to and authenticated by that Mortimer Affidavit as a business record. Tex. R. Civ. Evid. 902(10); Tex. Bus & Comm Code Section 3.308; Tex. R. Civ. P. 93(7); *Holland*, 597 S.W.2d. at 411. As a result, the statement is one of fact supported by documentary evidence, a business record and not conclusory.

Mr. Mortimer is familiar with the sale of the $2.5 Million Note and therefore, qualified to determine the principal balance and interest paid through date at the time of the sale of the $2.5 Million Note to Lissiak and the obligors of the $2.5 Million Note. *First Gibraltar Bank,* 895 S.W.2d at 428; *Zarges,* 652 S.W.2d at 369; *Thompson*, 840 S.W.2d at 28. Again he is reciting facts on which he has personal knowledge.

The statements in the Mortimer Affidavit are based on his personal knowledge, are not conclusory and his testimony in his affidavit and the $2.5 Million Note attached are competent summary

41

judgment evidence.

**Objections to the Lang Affidavit**

Mr. Lang states his capacity as vice president and what his relationship is to Lissiak's debt.  CR, v. 1 at 213-215; Tex. R. Civ. Pro. 166a(c); *Landers*, 788 S.W.2d at 165; *Barnam,* 612 S.W.2d at 80; *Waite*, 792 S.W.2d at 540.  This is a clear statement of fact and not conclusory.  The statement is also supported by paragraph 4 of the Mortimer Affidavit where Mr. Mortimer states SW hired Mr. Lang's employer to do the servicing and Anson Lang was appointed to handle that loan servicing function.  CR, v. 1 at 209.

As with the Mortimer Affidavit, the statement that the $2.5 Million Note was signed by Lissiak is a statement of fact determined from the $2.5 Million Note, a copy of which is also attached to and authenticated by that Lang Affidavit as a business record. Tex. R. Civ. Evid. 902(10); Tex. Bus & Comm Code Section 3.308; Tex. R. Civ. P. 93(7); *Holland*, 597 S.W.2d. at 411.  As a result, the statement is one of fact supported by documentary evidence.

As the servicing agent Mr. Lang has personal knowledge of the debt owed under the $2.5 Million Note, and what the balance was at the time of transfer.  *First Gibraltar Bank,* 895 S.W.2d at 428; *Zarges,* 652 S.W.2d at 369; *Thompson*, 840 S.W.2d at 28.  Mr. Lang identifies the interest rate on the $2.5 Million Note, all credits and the method used in calculating the balance due.  *Thompson*, 840 S.W.2d at 28; *Atchley*, 795 S.W.2d at 337; and *Trans-Continental*,

42

761 S.W.2d at 577. Math is an issue of law. His statements on the amount of the debt are a statement of fact on which he has personal knowledge in his capacity as vice president of the loan servicer. *Id.* Mr. Lang's personal knowledge of these facts are exactly the type handled by loan servicers in the capacity for which he has identified himself. *Landers*, 788 S.W.2d at 165; *Barnam,* 612 S.W.2d at 80; *Waite*, 792 S.W.2d at 540.

A statement by an officer as to the total amount of principal and interest due, without more, is all that is required for SW to prevail on summary judgment. *Thompson,* 840 S.W.2d at 28; *Atchley*, 795 S.W.2d at 337; and *Trans-Continental Finance*, 761 S.W.2d at577.

In the Lang Affidavit, the amounts are laid out to show in detail how the calculations were made. The statements in the Lang Affidavit are not conclusory and his testimony in his affidavit and the $2.5 Million Note attached are competent summary judgment evidence. *Id*.

Therefore, the trial court dd not err in granting SW summary judgment since SW presented competent summary judgment evidence to establish Lissiak's liability on the unsatisfied portion of the debt evidenced by the $2.5 Million Note and the Short Term Notes.

**Restated Issue No. 5-The trial court dd not abuse its discretion in granting SW summary judgment.**

As shown above, the trial court did not abuse its discretion in granting SW summary judgment. A trial court only abuses its discretion when it renders an arbitrary and unreasonable decision lacking support in the facts and circumstances of the case. *Goode*

*v. Shoukfeh*, 943 S.W.2d 441, 446 (Tex. 1997).

SW has shown in this brief that its motion for summary judgment and reply to Lissiak's response, provided the trial court with competent summary judgment evidence to support its claim to Lissiak's liability under the debt evidenced by the $2.5 Million Note and Short Term Notes and the amount of that debt. CR, v. 1 at 198-225 and v.3 at 620-633. With the trial court impliedly sustaining SW objections to Lissiak's summary judgment evidence sufficient to grant the summary judgment, Lissiak failed to produce competent summary judgment evidence to make a *prima facie* case as to all of the elements on one of Lissiak's affirmative defenses. CR, v. 3 at 611-619.

None of the trial courts actions created an arbitrary and unreasonable decision. In addition, the cases cited by Lissiak do not support its position. For example, Lissiak cites to *Eli Lilly & Co. v. Marshall*, 829 S.W.2d 157, 158 (Tex. 1992) that it is error and abuse of discretion to rule on pending objections. Eli Lilly applies to failure to rule on pending motions not objections. Id., at 158. Likewise, Lissiak cites to *In re Shredder Co.*, 225 S.W.3d 676, 679 (Tex. App-El Paso 2006 orig., proceeding) and *In re Kleven*, 100 S.W.3d 643, 644 (Tex. App-Texarkana 2003 orig. proceeding), for similar propositions but these cases also apply to motions and not summary judgment objections.

44

**Restated Issue 5a-the trial court impliedly overruled Lissiak's objections to the Bates, Mortimer and Lang affidavits and Lissiak has appealed that ruling**

As a prerequisite to presenting a complaint for appellate review, the record must show that: (1) the complaint was made to the trial court by a timely request, objection, or motion, and (2) the trial court either expressly or implicitly ruled on the objection or refused to rule with the complaining party objecting to the refusal. *Alejandro v. Bell*, 84 S.W.3d 383, 387-88 (Tex. App.-Corpus Christi 2002, no pet) citing to *Columbia Rio Grande Reg'l Hosp. v. Stover,* 17 S.W.3d 387, 395 (Tex. App.-Corpus Christi 2000, no pet.). No written order overruling the objection is necessary if the record reflects that the trial court ruled on the party's objections, either explicitly or implicitly. Id. at 388.

Since the trial court did not expressly rule on either Lissiak's objections, it impliedly overruled Lissiak's objections to the Bates, Mortimer and Lang Affidavits, sufficient to support the summary judgment. With the objections overruled, Lissiak brought the objections to this court. However, as shown in the brief as to Issue 4 above, those objections are not well taken and overruling those objections are proper. Lissiak fails to show that the trial court declining to expressly rule on his objections to the Bates, Mortimer and Lang Affidavits, was an abuse of discretion.

**Restated Issue 5b-SW met its burden of proof on summary judgment and the court did not abuse its discretion in granting the motion for summary judgment**

SW incorporates its brief as to issues 1, 2 and 3 in response to this item. SW's motion for summary judgment and accompanying summary judgment evidence presented a *prima facie* case on Lissiak's liability to SW on the debt evidenced by the $2.5 Million Note and Short Term Notes and the amount of that liability. CR, v. 1 at 198-225.

**Restated Issue 5c-Lissiak failed to support any of his affirmative defenses with competent summary judgment proof**

SW incorporates its brief as to restated issues 1, 2 and 3 and its cross-points as to Lissiak's summary judgment evidence in response to this item. Lissiak failed to meet all of the elements of at least one of his affirmative defenses with competent summary judgment evidence. SW's meet its burden of proof to warrant the summary court granted by the trial court and the trial court did not abuse its discretion in granting SW summary judgment.

The trial court did not abuse its discretion or render an arbitrary or unreasonable decision lacking support in the facts and circumstances of the case when it granted SW summary judgment. *Goode*, 943 S.W.2d at 446. Issue 5 should be overruled.

**Relief In Lissiak's Conclusion and Prayer**

Lissiak requests that this court reverse the summary judgment and render judgment in favor of Lissiak that SW take nothing. Lissiak had no cross-motion for summary judgment on file when the trial court granted SW's motion for summary judgment. As a result,

46

Lissiak's request is inappropriate, not supported by the record, and should not be considered.

## Conclusion and Prayer

The trial court did not err in granting SW summary judgment, its decision should be affirmed, Lissiak's issues overruled, and SW granted such other and further relief to which it is justly entitled.

Respectfully submitted,

/s/ Stephen Sakonchick, II

_____
Stephen Sakonchick, II
State Bar No. 17525500
Stephen Sakonchick II, P.C.
6502 Canon Wren Drive
Austin, Texas   78746
(512) 329-0375
(512) 697-2859 (fax)
Attorney for Appellee
SW Loan OO, L.P.

## Appellee's Rule 9.4 Certificate of Compliance

This brief complies with the type-volume limitations of Rule 9.4 because it contains words 11,938, excluding the parts of the brief exempted by the rule.

/s/ Stephen Sakonchick, II

_____
Stephen Sakonchick, II

## Certificate of Service

I hereby certify that on May 14, 2015, I served a copy of the foregoing by efile, on Robert H. Holmes, the Holmes Law Firm, 3401 Beverly Drive, Dallas, Texas 75205, rhholmes@swbell.net.

/s/ *Stephen Sakonchick, II*

_____
Stephen Sakonchick, II

No. 12-14-00344-CV


In the Court of Appeals
Twelfth District of Texas
at Tyler

_____

Victor Lissiak, Jr.

                                    Appellant


V.


SW Loan OO, L.P.

                                    Appellee

_____

On Appeal from the 7th Judicial District Court
of Smith County, Texas
_____

**Appellee's Appendix**

_____




                    Stephen Sakonchick, II
                    State Bar No. 17525500
                    Stephen Sakonchick II, P.C.
                    6502 Canon Wren Drive
                    Austin, Texas  78746
                    (512) 329-0375
                    (512) 697-2859 (fax)

                    Attorney for Appellee
                    SW Loan OO, L.P.

Index to Appendix

Confidentiality Agreement (CR, v. 3 at 619)........... A-1

Relevant Statutes and Rules .......................... A-2

**Statutes**

Tex. Bus & Comm Code Section 1.201(b)(39)..... A-2

Tex. Bus & Comm Code Section 3.308 ........... A-2

Tex. Bus & Comm Code Section 3.401 ........... A-2

Tex. Bus & Comm Code Section 3.605 ........... A-3

Tex. Bus & Comm Code Section 9.102(a)(72) .... A-6

**Rules**

Tex. R. Civ. P. 93(7) ........................ A-7

Tex. R. Civ. P. 166a(c) ...................... A-7

Tex. R. Civ P. 166a(f) ....................... A-8

Tex. R. Civ. Evid. 902(10) ................... A-9

Tex. R. App. P. 33.1(a)(2)(A) ................ A-11

*State Bank of Grove v. North*, 418 P.2d 928 (Okla. 1966). A-12



# THE SNELL LAW FIRM, PLLC

May 12, 2015

Stephen Sakonchick, II, Esq.
STEPHEN SAKONCHICK II, P.C.
6502 Canon Wren Drive
Austin, Texas 78746

Re: *Hammond Caulking, Inc. et. al. v. Jeffrey Dean Hammond and Lisa Hammond;* In the 126th District Court of Travis County, Texas; Cause No. D-1-GN-14-004612

## RULE 11 AGREEMENT

Dear Mr. Sakonchick:

This letter confirms that Plaintiffs grant an extension of time for Defendants Jeffrey Dean Hammond and Lisa Hammond to close the sale of an existing contract for the sale of the Condominium ("Contract") through and including May 15, 2015. Further, this letter confirms the parties have agreed to reduce the settlement payment in their existing Settlement Agreement dated January 27, 2015, from $750,000.00 to $700,000.00, as to the closing of the Contract only, with such payment being made to Plaintiffs on or before May 20, 2015. Based on the foregoing, Plaintiffs agree they will not claim Defendants are in violation of the Agreed Order Granting Injunctive Relief dated January 29, 2015. All remaining terms of the Settlement Agreement and Agreed Order Granting Injunctive Relief, remain the same, including, without limitation, the agreement to convey the Condominium to Plaintiffs if the Contract does not close on or before May 15, 2015.

If the above accurately describes the agreement between Plaintiffs and Defendants, please sign below to acknowledge this agreement. Thank you for your courtesy in this matter.

Sincerely,
THE SNELL LAW FIRM, P.L.L.C.

*/s/ Andrea M. Bergia*

Andrea M. Bergia

My signature below certifies that Plaintiffs agree to all of the provisions contained in this Rule 11 Agreement.

_____          5/13/15
Stephen Sakonchick, Esq.                  Date
Attorney for Plaintiffs

THE LITTLEFIELD BUILDING
106 E 6TH STREET, SUITE 330
AUSTIN, TEXAS 78701
T: (512) 477-5291
F: (512) 477-5294
WWW.SNELLFIRM.COM

A-1

**Texas Statutes-Business and Commerce Code**

**§ 1.201. General Definitions**

(a)    Unless the context otherwise requires, words or phrases defined in this section, or in the additional definitions contained in other chapters of this title that apply to particular chapters or parts thereof, have the meanings stated.

(b)    Subject to definitions contained in other chapters of this title that apply to particular chapters or parts thereof:

    (39)    "Surety" includes a guarantor or other secondary obligor.

**§ 3.308. Proof Of Signatures And Status As Holder In Due Course**

(a)    In an action with respect to an instrument, the authenticity of, and authority to make, each signature on the instrument are admitted unless specifically denied in the pleadings. If the validity of a signature is denied in the pleadings, the burden of establishing validity is on the person claiming validity, but the signature is presumed to be authentic and authorized unless the action is to enforce the liability of the purported signer and the signer is dead or incompetent at the time of trial of the issue of validity of the signature. If an action to enforce the instrument is brought against a person as the undisclosed principal of a person who signed the instrument as a party to the instrument, the plaintiff has the burden of establishing that the defendant is liable on the instrument as a represented person under Section 3.402(a).

(b)    If the validity of signatures is admitted or proved and there is compliance with Subsection (a), a plaintiff producing the instrument is entitled to payment if the plaintiff proves entitlement to enforce the instrument under Section 3.301, unless the defendant proves a defense or claim in recoupment. If a defense or claim in recoupment is proved, the right to payment of the plaintiff is subject to the defense or claim, except to the extent the plaintiff proves that the plaintiff has rights of a holder in due course that are not subject to the defense or claim.

**§ 3.401. Signature**

(a)    A person is not liable on an instrument unless the person:

    (1)    signed the instrument; or

(2)   is represented by an agent or representative who signed the instrument and the signature is binding on the represented person under Section 3.402.

(b)   A signature may be made (i) manually or by means of a device or machine, and (ii) by the use of any name, including a trade or assumed name, or by a word, mark, or symbol executed or adopted by a person with present intention to authenticate a writing.


## § 3.605. Discharge Of Secondary Obligors

(a)   If a person entitled to enforce an instrument releases the obligation of a principal obligor in whole or in part, and another party to the instrument is a secondary obligor with respect to the obligation of that principal obligor, the following rules apply:

(1)   Any obligations of the principal obligor to the secondary obligor with respect to any previous payment by the secondary obligor are not affected. Unless the terms of the release preserve the secondary obligor's recourse, the principal obligor is discharged, to the extent of the release, from any other duties to the secondary obligor under this chapter.

(2)   Unless the terms of the release provide that the person entitled to enforce the instrument retains the right to enforce the instrument against the secondary obligor, the secondary obligor is discharged to the same extent as the principal obligor from any unperformed portion of its obligation on the instrument. If the instrument is a check and the obligation of the secondary obligor is based on an indorsement of the check, the secondary obligor is discharged without regard to the language or circumstances of the discharge or other release.

(3)   If the secondary obligor is not discharged under Subdivision (2), the secondary obligor is discharged to the extent of the value of the consideration for the release, and to the extent that the release would otherwise cause the secondary obligor a loss.

(b)   If a person entitled to enforce an instrument grants a principal obligor an extension of the time at which one or more payments are due on the instrument and another party to the instrument is a secondary obligor with respect to the obligation of that principal obligor, the following rules apply:

(1)   Any obligations of the principal obligor to the secondary obligor with respect to any previous payment by the secondary obligor are not affected. Unless the terms of the extension preserve the secondary obligor's recourse, the extension correspondingly extends the time for performance of any other duties owed to the secondary obligor by the principal obligor under this chapter.

(2)   The secondary obligor is discharged to the extent that the extension would otherwise cause the secondary obligor a loss.

(3)   To the extent that the secondary obligor is not discharged under Subdivision (2), the secondary obligor may perform its obligations to a person entitled to enforce the instrument as if the time for payment had not been extended or, unless the terms of the extension provide that the person entitled to enforce the instrument retains the right to enforce the instrument against the secondary obligor as if the time for payment had not been extended, treat the time for performance of its obligations as having been extended correspondingly.

(c)   If a person entitled to enforce an instrument agrees, with or without consideration, to a modification of the obligation of a principal obligor other than a complete or partial release or an extension of the due date and another party to the instrument is a secondary obligor with respect to the obligation of that principal obligor, the following rules apply:

(1)   Any obligations of the principal obligor to the secondary obligor with respect to any previous payment by the secondary obligor are not affected. The modification correspondingly modifies any other duties owed to the secondary obligor by the principal obligor under this chapter.

(2)   The secondary obligor is discharged from any unperformed portion of its obligation to the extent that the modification would otherwise cause the secondary obligor a loss.

(3)   To the extent that the secondary obligor is not discharged under Subdivision (2), the secondary obligor may satisfy its obligation on the instrument as if the modification had not occurred, or treat its obligation on the instrument as having been modified correspondingly.

(d)   If the obligation of a principal obligor is secured by an interest in collateral, another party to the instrument is a

secondary obligor with respect to that obligation, and a person entitled to enforce the instrument impairs the value of the interest in collateral, the obligation of the secondary obligor is discharged to the extent of the impairment. The value of an interest in collateral is impaired to the extent the value of the interest is reduced to an amount less than the amount of the recourse of the secondary obligor, or the reduction in value of the interest causes an increase in the amount by which the amount of the recourse exceeds the value of the interest. For purposes of this subsection, impairing the value of an interest in collateral includes failure to obtain or maintain perfection or recordation of the interest in collateral, release of collateral without substitution of collateral of equal value or equivalent reduction of the underlying obligation, failure to perform a duty to preserve the value of collateral owed, under Chapter 9 or other law, to a debtor or other person secondarily liable, and failure to comply with applicable law in disposing of or otherwise enforcing the interest in collateral.

(e)   A secondary obligor is not discharged under Subsection (a)(3), (b), (c), or (d) unless the person entitled to enforce the instrument knows that the person is a secondary obligor or has notice under Section 3.419(c) that the instrument was signed for accommodation.

(f)   A secondary obligor is not discharged under this section if the secondary obligor consents to the event or conduct that is the basis of the discharge, or the instrument or a separate agreement of the party provides for waiver of discharge under this section specifically or by general language indicating that parties waive defenses based on suretyship or impairment of collateral. Unless the circumstances indicate otherwise, consent by the principal obligor to an act that would lead to a discharge under this section constitutes consent to that act by the secondary obligor if the secondary obligor controls the principal obligor or deals with the person entitled to enforce the instrument on behalf of the principal obligor.

(g)   A release or extension preserves a secondary obligor's recourse if the terms of the release or extension provide that:

    (1)   the person entitled to enforce the instrument retains the right to enforce the instrument against the secondary obligor; and

    (2)   the recourse of the secondary obligor continues as if the release or extension had not been granted.

(h)   Except as otherwise provided in Subsection (i), a secondary obligor asserting discharge under this section has the burden of

persuasion both with respect to the occurrence of the acts alleged to harm the secondary obligor and loss or prejudice caused by those acts.

(i)    If the secondary obligor demonstrates prejudice caused by an impairment of its recourse, and the circumstances of the case indicate that the amount of loss is not reasonably susceptible of calculation or requires proof of facts that are not ascertainable, it is presumed that the act impairing recourse caused a loss or impairment equal to the liability of the secondary obligor on the instrument. In that event, the burden of persuasion as to any lesser amount of the loss is on the person entitled to enforce the instrument.

## § 9.102. Definitions And Index Of Definitions

(a)    In this chapter:

(72)    "Secondary obligor" means an obligor to the extent that:

(A)    the obligor's obligation is secondary; or

(B)    the obligor has a right of recourse with respect to an obligation secured by collateral against the debtor, another obligor, or property of either.

**TEXAS RULES OF CIVIL PROCEDURE**

**Rule 93. CERTAIN PLEAS TO BE VERIFIED**

A pleading setting up any of the following matters, unless the truth of such matters appear of record, shall be verified by affidavit.

7. Denial of the execution by himself or by his authority of any instrument in writing, upon which any pleading is founded, in whole or in part and charged to have been executed by him or by his authority, and not alleged to be lost or destroyed. Where such instrument in writing is charged to have been executed by a person then deceased, the affidavit shall be sufficient if it states that the affiant has reason to believe and does believe that such instrument was not executed by the decedent or by his authority. In the absence of such a sworn plea, the instrument shall be received in evidence as fully proved.

**Rule 166a. SUMMARY JUDGMENT**

(c) **Motion and Proceedings Thereon.** The motion for summary judgment shall state the specific grounds therefor. Except on leave of court, with notice to opposing counsel, the motion and any supporting affidavits shall be filed and served at least twenty-one days before the time specified for hearing. Except on leave of court, the adverse party, not later than seven days prior to the day of hearing may file and serve opposing affidavits or other written response. No oral testimony shall be received at the hearing. The judgment sought shall be rendered forthwith if (i) the deposition transcripts, interrogatory answers, and other discovery responses referenced or set forth in the motion or response, and (ii) the pleadings, admissions, affidavits, stipulations of the parties, and authenticated or certified public records, if any, on file at the time of the hearing, or filed thereafter and before judgment with permission of the court, show that, except as to the amount of damages, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law on the issues expressly set out in the motion or in an answer or any other response. Issues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal. A summary judgment may be based on uncontroverted testimonial evidence of an interested witness, or of an expert witness as to subject matter concerning which the trier of fact must be guided solely by the opinion testimony of experts, if the evidence is clear, positive and direct, otherwise credible and free from contradictions and inconsistencies, and could have been readily controverted.

(f)   **Form of Affidavits; Further Testimony.** Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions or by further affidavits. Defects in the form of affidavits or attachments will not be grounds for reversal unless specifically pointed out by objection by an opposing party with opportunity, but refusal, to amend.

**TEXAS RULES OF EVIDENCE**

**Rule 902. Self-Authentication [Effective September 1, 2014]**
The following items of evidence are self-authenticating; they require no extrinsic evidence of authenticity in order to be admitted:

**(10)** *Business Records Accompanied by Affidavit.* The original or a copy of a record that meets the requirements of Rule 803(6) or (7), if the record is accompanied by an affidavit that complies with subparagraph (B) of this rule and any other requirements of law, and the record and affidavit are served in accordance with subparagraph (A). For good cause shown, the court may order that a business record be treated as presumptively authentic even if the proponent fails to comply with subparagraph (A).

(A) *Service Requirement.* The proponent of a record must serve the record and the accompanying affidavit on each other party to the case at least 14 days before trial. The record and affidavit may be served by any method permitted by Rule of Civil Procedure 21a.

(B) *Form of Affidavit.* An affidavit is sufficient if it includes the following language, but this form is not exclusive. The proponent may use an unsworn declaration made under penalty of perjury in place of an affidavit.

1. I am the custodian of records [or I am an employee or owner] of _____ and am familiar with the manner in which its records are created and maintained by virtue of my duties and responsibilities.

2. Attached are ____ pages of records. These are the original records or exact duplicates of the original records.

3. The records were made at or near the time of each act, event, condition, opinion, or diagnosis set forth. [or It is the regular practice of _____ to make this type of record at or near the time of each act, event, condition, opinion, or diagnosis set forth in the record.]

4. The records were made by, or from information transmitted by, persons with knowledge of the matters set forth. [or It is the regular practice of _____ for this type of record to be made by, or from information transmitted by, persons with knowledge of the matters set forth in them.]

5. The records were kept in the course of regularly conducted business activity. [or It is the regular practice of _____ to keep this type of record in the course of regularly conducted business activity.]

6. It is the regular practice of the business activity to make the records.

**TEXAS RULES OF APPELLATE PROCEDURE**

## 33.1. Preservation; How Shown

**(a) In General**. As a prerequisite to presenting a complaint for appellate review, the record must show that:

(1) the complaint was made to the trial court by a timely request, objection, or motion that:

(A) stated the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context; and

(B) complied with the requirements of the Texas Rules of Civil or Criminal Evidence or the Texas Rules of Civil or Appellate Procedure; and

(2) the trial court:

(A) ruled on the request, objection, or motion, either expressly or implicitly; or

(B) refused to rule on the request, objection, or motion, and the complaining party objected to the refusal.

418 P.2d 928 (Okla. 1966)

STATE BANK OF GROVE, a Corporation, Plaintiff in Error,

v.

Robert L. NORTH, Defendant in Error.

No. 41493.

Supreme Court of Oklahoma.

October 11, 1966.

Page 929

Syllabus by the Court

1. A promissory note carries with it the presumption of a consideration and the burden is upon the party executing it to prove by a preponderance of the evidence want of consideration.

2. Where, in an action upon a promissory note, defendant in his verified answer pleads a general denial and certain affirmative defenses but at trial admits execution of the note, reserving the right to question its 'authenticity,' and where the note is properly offered in evidence and both parties thereupon rest, a prima facie case is established by plaintiff and it is error for the trial court to sustain a demurrer to plaintiff's evidence.

Appeal from the District Court of Delaware County; Joseph G. Breaune, Judge.

Action on a promissory note. Plaintiff appeals from the judgment of the trial court sustaining a demurrer to the evidence. Reversed with directions.

Riley Q. Hunt, Jay, for plaintiff in error.

Pitcher, Logan & Lowry, by J. Duke Logan, Vinita, for defendant in error.

WILLIAMS, Justice.

There is involved here a suit on a promissory note. Parties will be referred to as they appeared in the trial court. The trial court sustained the demurrer of the defendant to the evidence of the plaintiff. Plaintiff appeals. The sole question presented on appeal is the correctness of the ruling of the trial court in sustaining the demurrer to the evidence.

Plaintiff, State Bank of Grove, alleges in its petition that on the 19th day of May, 1958, it loaned the defendant North the sum of $7500, secured by his promissory note. A copy of said note is attached to plaintiff's petition. Plaintiff seeks judgment for the balance due on the note plus interest and attorneys fees.

Defendant in his answer denied the allegations of plaintiff's petition except such allegations as were admitted. Defendant admitted that he at special request of the managing officer of the plaintiff bank executed a note similar to one attached to the petition of the plaintiff but alleged that he did not receive any of the proceeds of said purported loan nor did the bank loan him any money. He stated that he made no payments on said purported loan and that said purported loan failed because of lack of consideration. Defendant further alleged that he was induced to sign said note because of fraudulent and deceitful representations made to him by the managing officer of the bank. He further pleaded the defense of laches.

M. C. Buzzard, assistant vice-president of the plaintiff bank, identified the note sued upon and testified that it is a note signed by Robert L. North on May 19, 1958, in the amount of $7500.00 and that the balance due on the note is $7250.00 plus interest since April 19, 1962; that the note is a part of the assets of plaintiff bank and has not been paid. The note was admitted in evidence without

Page 930 objections with reservations as to its 'authenticity'.

Buzzard identified plaintiff's exhibit 2, same being a page from the teller's cash journal of the plaintiff bank, dated May 19, 1958. The exhibit was admitted in evidence without objections. Buzzard testified that the name of Robert L. North was shown on the exhibit as having made a note (No. 17873) to the bank on May 19, 1958, for the sum of $7500.00 and the bank having paid out said sum on that date.

On cross-examination Buzzard testified that he was not employed by plaintiff bank on May 19, 1958, had nothing to do with the transaction involved and could not identify defendant's signature on the note; that he cannot state how the proceeds of the loan were paid out; that the records do not establish if the proceeds were deposited to defendant's account, paid in cash or credited to another obligation.

On re-direct examination Buzzard testified that the bank definitely paid out the money but he does not know where it went.

Defendant North, called as a witness by the plaintiff, testified that he believes the signature, Robert L. North, on the note offered in evidence is his signature.

The note offered in evidence shows it to have been executed by Robert L. North to have plaintiff bank in the amount of $7500.00 on May 19, 1958. On the back of the

note several extensions are shown, each signed by Robert L. North. Interest payments are shown on the face of the note, the last one being on March 28, 1962, for interest due to April 19, 1962. On January 5, 1962, a payment of $250.00 was made on the principal.

In sustaining the demurrer of the defendant to the evidence the trial court said:

'All right. In view of the fact that, in my opinion, the general rule is that between a maker and a holder * * * or not a holder in due course of a note that is delinquent, that you must prove some consideration. And if this bank was a holder in due course it might be a little different. I think the rule would be somewhat different, but the bank is not a holder in due course. I think you have got to prove consideration, which, I think, you failed to do. I don't think that this man * * * the mere fact that he signed the note is not consideration, so I will sustain the demurrer to the evidence.'

The Uniform Commercial Code became effective at midnight on December 31, 1962, 'to transactions entered into and events occurring after that date', Title 12A § 10--101 O.S.1961, and is not applicable to the present transaction which occurred in 1958.

The Negotiable Instruments statutes, 48 O.S.1951, §§ 71 and 75, before repealed by 12A O.S.1961 § 10--102, provided respectively as follows:

'Every negotiable instrument is deemed prima facie to have been issued for a valuable consideration; and every person whose signature appears thereon to have become a party thereto for value.'

'Absence or failure of consideration is matter of defense as against any person not a holder in due course; and partial failure of consideration is a defense pro tanto, whether the failure is an ascertained and liquidated amount or otherwise.'

The general law of Contracts, 15 O.S.1951 (and 1961) §§ 114 and 115 is of similar effect.

Title 15 § 114, O.S.1951, same section, O.S.1961, reads:

'A written instrument is presumptive evidence of a consideration.'

Title 15 § 115, O.S.1951, same section, O.S.1961, reads:

'The burden of showing a want of consideration sufficient to support an

**Page 931**instrument lies with the party seeking to invalidate or avoid it.'

In *Strickland v. Hetherington, Okl.,* 353 P.2d 138, a suit by the payee against the maker of a note, this Court said:

'It must be conceded that the note involved here imported a consideration, and that its introduction in evidence made out a prima facie case. The defendant had the legal right, the note being in the hands of the payee, to prove want of consideration for the same.'

In the second paragraph of the syllabus of that case we said:

'Where the consideration of a note is disputed and there is conflicting testimony, the jury must decide the point, and it is error to direct a verdict for plaintiff where admitting the truth of all the evidence given in favor of the defendant, together with such inferences and conclusions as may be reasonably drawn therefrom, there is competent evidence to reasonably sustain a verdict, should the jury find for the defendant.'

In 11 C.J.S. Bills and Notes § 684 p. 176, the rule is stated:

'In accordance with the rules relating to presumption as shown supra § 655, in the first instance, plaintiff makes out a prima facie case in favor of the consideration of a negotiable bill or note by merely introducing it in evidence, and where a nonnegotiable note contains the words, 'for value received,' its admission in evidence is prima facie sufficient to sustain the burden of proof as to consideration. So, an endorsement of a note by the payee is prima facie evidence that it was duly assigned for a sufficient consideration. The plea of failure of consideration, although verified, does not overcome such prima facie case, and if defendant offers no evidence to show want or failure of consideration, the mere production of the note is sufficient to establish plaintiff's case * * *'

Defendant in his answer admits that he signed a note similar to the one sued upon. His answer as a whole amounts to an admission of the execution of the note. He pleads special defenses of lack of consideration and fraud. The burden was upon him to establish these defenses by a preponderance of the evidence. *Ball v. White,* 50 Okl. 429, 150 P. 901. Defendant did not object to the introduction of the note in evidence on the grounds it was not properly executed. He agreed that the note might be admitted with the mild objection that he reserved the right to question its authenticity. At the trial he testified that he believed the signature on the note to be his. The facts in the present case are quite similar to those presented in *Shidler v. Ross,* 189 Okl. 65, 113 P.2d 603, wherein this Court said:

'The rule in this state is that the burden of showing want of consideration sufficient to support an instrument is with the party seeking to invalidate it. *Liverpool & London & Glove Ins. Co., Ltd. v. Biggers et al.,* 71 Okl. 47, 175 P. 242; *Miller v. Oil Well Supply Co.,* 79 Okl. 135, 191 P. 1094; 15 Okl.St.Ann. §§ 114 and 115.'

A-13

Plaintiff established at least a prima facie case by competent evidence. The trial court erred in sustaining the demurrer of the defendant to the evidence.

Reversed with directions to the trial court to grant the plaintiff a new trial.

HALLEY, C.J., JACKSON, V.C.J., and DAVISON, BLACKBIRD, IRWIN, BERRY and HODGES, JJ., concur.

A-14